[No. 1286.]

## Ex-Parte MILES FINLEN.

Murder—Indictment for—Habeas Corpus—Examination of Testimony Before Grand Jury—When Defendant Entitled to Release on Bail—Constitution and Statutes, Construed.—Petitioner was indicted by the grand jury of Storey county for murder in the first degree. He applied to the district judge to be admitted to bail upon *habeas corpus*, and his application was refused on the ground that the indictment found by the grand jury made the proof evident and presumption great that the offense charged therein had been committed. He then applied to the chief justice of the supreme court for the same relief: *Held*, by Leonard C. J., in construing Art. 1, Sec. 7 of the constitution, and 3687, 4141, 4378 and 4602, of the general statutes, that as the petition, for the writ of *habeas corpus*, contained allegations which, if true, showed the offense of petitioner to be manslaughter only, the petitioner was entitled to have the evidence of the witnesses before the grand jury reviewed for the purpose of enabling the court or judge to ascertain whether the proof is evident or the presumption great, and thereby to determine whether the offense committed—as shown by this and other testimony—is a bailable offense.

Idem—Testimony Conflicting—Bail Refused.—Upon the testimony taken: *Held*, that it was conflicting upon material points, and that bail should be refused.

Application to be admitted to bail on *habeas corpus*.

The facts are stated in the opinion.

*W. E. F. Deal*, for Petitioner.

(No brief on file.)

*J. F. Alexander*, Attorney General, for the State.

(No brief on file.)

*F. M Huffaker*, District Attorney of Storey county; also for the State.

I. The indictment being for murder, raises so great a presumption of the guilt of defendant as to deprive him of the right to bail. (Gen. Stat. 4378.)

II. The finding of the grand jury cannot be inquired into or reviewed for any purpose on this application; nor can its effect in creating such a presumption against defendant be

repelled by testimony as to his guilt or innocence. Our statute never designed the writ of *habeas corpus* should be used for any such purpose. (*Ex parte Allen*, 12 Nev. 87; *People* v. *Tinder*, 19 Cal. 539; 81 Am. Dec. 77.)

III. The defendant having plead to the indictment in the district court, can this court, or any justice thereof, on this writ, examine the witnesses on the merit of the indictment? .If so, why submit the case to a jury?

IV. The district court having acted on the .application of petitioner for bail, this court will not entertain a similar application unless it affirmatively appears that .the court has erred arbitrarily. (*Ex parte Isbell*, 11 Nev. 295; *Ex parte Deny*, 10 Nev. 213.)

At Chambers, LEONARD, C. J.:

On May 23, 1888, petitioner was duly indicted by the grand jury of Storey county, in this state, for the crime of murder in the first degree, alleged to have been committed in said county, May 5, 1888, in the killing of one David Pyne, as stated in the indictment. He was subsequently arrested upon a bench-warrant issued out of the district court of the state, in Storey county, and has ever since been confined in the county jail of said county, in the custody of the keeper thereof. On the 26th day of May, 1888, he pleaded not guilty to the indictment, and the cause was set for trial, July 16, 1888, at his request. On June 5, 1888, he applied to Hon. Richard Rising, district judge, for a writ of *habeas corpus* for the purpose of being admitted to bail. The writ was issued, and on June 11, 1888, the judge dismissed the writ, and remanded petitioner, for the reason, among others, that the indictment found by the grand jury made the proof evident, and the presumption great, that the offense charged therein had been committed. Thereupon the court informed petitioner and his counsel that they could have a trial at an earlier date than the one set, if they so desired. On June 13, 1888, a similar petition was presented to me, as chief justice of the supreme court, for the issuance of a writ of *habeas corpus*, for the same purpose. The writ was issued, and made returnable June 18, 1888. On that day, petitioner being present in the custody of the jailer, the district attorney of Storey county and the attorney general appeared for the state, and in opposition to the

application, moved to dismiss the writ upon two grounds: *First,* because the petition was insufficient, in that it stated no facts showing a bailable offense; *Second,* because an indictment for murder raises so great a presumption of the guilt of the defendant as to deprive him of the right to bail, and the finding of the grand jury cannot be reviewed on an application for bail, or its effect in creating such presumption be repelled by testimony as to his guilt or innocence.

The only attempt made in the petition first filed to state facts showing a bailable offense consisted in an allegation to the effect that "petitioner is innocent of any offense or crime; that he is entitled, to be admitted to bail, and is entitled to make application to be admitted to bail and to be heard with his proofs upon such application, before some judge of some court of competent jurisdiction; and that he has been deprived of such right." My opinion was and is, that the first ground of objection to the petition was well taken; and, upon an intimation of such conclusion, petitioner, upon leave granted, amended his petition by alleging under oath, as follows: "That heretofore, to wit, on the 5th day of May, 1888, at the city of Virginia, county of Storey, state of Nevada, the said David Pyne and your petitioner, by agreement consented and agreed to fight, and, in pursuance of such agreement did fight at said county of Storey, and in such fight your petitioner struck said David Pyne with his hand in self-defense; that he is informed and believes, and upon such information and belief alleges the fact to be, that said David Pyne did not die by reason of said blow, nor did your petitioner kill, or intend to kill, said David Pyne. And your petitioner shows that all he did was in pursuance of said agreement to fight, and that he never in his life struck said David Pyne except in the fight above mentioned, which was by agreement, and, which blow was given by defendant in necessary self-defense."

The statute provides (Gen. Stat. 4602) that if any person or persons, with or without deadly weapons, upon previous concert and agreement, fight one with the other, or give or send, or authorize any other person to give or send, a challenge, verbally or in writing, to fight any other person, the person or persons giving, sending, or accepting a challenge to fight any other person, with or without weapons, upon conviction thereof, shall be punished by imprisonment in the state prison not less than two or more than five years. * * * Should

death ensue to any person in such fight, or should any person die from any injuries received in such fight, within one year and one day, the person or persons causing, or having any agency in causing, such death, either by fighting, or by giving or sending for himself, or for any other person, or in receiving for himself, or for any other person, such challenge to fight, shall be deemed guilty of manslaughter, and punished accordingly." Article 1, Sec. 7, of the constitution of the state, provides that "all persons shall be bailable by sufficient sureties unless for capital offenses, when the proof is evident, or u₋ presumption great." Under the statute, no person charged with an offense punishable with death can be admitted to bail when the proof is evident, or the presumption great. (Gen. Stat. 4378.) Under the constitution and statute, any person charged with an offense punishable with death has the right to be admitted to bail before conviction, if the proof of his guilt is not evident, or the presumption of it is not great. At the hearing it was not denied by counsel for the state that, if the allegations of the amended petition were true in fact, then, under section 4602, Gen. Stat., the petitioner was at most guilty of manslaughter. In other words, it was not denied, if Finlen and Pyne fought fairly, one with the other, in pursuance of previous concert and agreement, and if, in such fight, Finlen inflicted upon Pyne a mortal stroke or wound, that then petitioner's offense was at most manslaughter. But it was claimed, on behalf of the state, that the indictment raised so strong presumption of petitioner's guilt of a capital offense charged therein, that in this proceeding oral testimony could not be received to repel such presumption. On the other hand Finlen's counsel claimed the right to remove the presumption raised by the indictment by oral testimony, and especially to show, by all the witnesses who testified before the grand jury, and by all whom the state might call or suggest, without any material conflict, the facts alleged in the amended petition. He asserted that all the evidence that had been or could be produced, would show that the facts alleged in the amended petition were true. I was not asked to pass upon and weigh conflicting testimony. All the witnesses examined before the grand jury but one were present, and the substance of what the absent witness would testify to, if called, was agreed to by the opposing counsel. The question, therefore, was and is whether

the circumstances shown were such as to justify the admission of evidence *aliunde* the indictment, and, if necessary, all the evidence touching the allegation and claim of petitioner that the alleged offense was and could be, under the statute, but manslaughter, and that all the evidence in the case would show it to be such.

It will serve no useful purpose to collate the many and opposing authorities upon this question. A few courts have held that under no circumstances, after indictment found for a capital offense, can the accused be admitted to bail; that the presumption of guilt, raised by the indictment is so great, that no evidence can be received on application for bail to repel it. Many others have held that evidence will not be received except under special and extraordinary cases. Many others, and I think the greater number, have held that the production of an indictment makes a *prima facie* case of guilt in the highest degree of which the defendant could be convicted under the indictment; but that in proceedings to obtain bail, exculpatory evidence may be produced by the defendant, and rebutting evidence by the state, and that upon all the evidence so produced, together with the indictment, the judge or court issuing the writ must decide whether "the proof is evident, or the presumption great," that the defendant is guilty of a capital offense, and grant or refuse bail according to the conclusion reached. All of the last-mentioned line of decisions agree that the burden is upon the accused to remove the presumption raised by the indictment. In *Lumm* v. *State*, 3 Porter, (Ind.) 294, the petitioner was in custody under a charge of murder in the first degree, preferred by indictment. He prayed for a writ of *habeas corpus* to enable him to give bail. At the hearing he contended that he was not guilty of the offense charged, and that he had a right to go behind the indictment, and prove to the judge that the offense of which he was guilty was of an inferior grade—a grade that was bailable—and that upon making such proof he was entitled to be let to bail. The court sustained this view, upon the ground that the statute of Indiana had changed the English rule not to go behind the indictment. The statute of that state was substantially like ours. (Rev. Stat. Ind. 1843, 927; Gen. Stat. Nev. 3671.) I quote from the opinion: "The judges in that country [England] do not

go behind the indictment on applications of this charac-
ter, not because it would seem, from an opinion of impro-
priety in so doing, but from a want of power. They say
the evidence before the grand jury is secret, and to be
kept secret, and that hence they cannot avail themselves of
the means of judging of the case. Where a party is committed
upon a criminal charge otherwise than upon an indictment, they
re-examine the case upon *habeas corpus*, and remand or let to
bail as is judged right. * * * Our statute contemplates two
kinds of applications for the writ of *habeas corpus*—one in
which the petitioner claims to be absolutely discharged from
custody, on the ground that his arrest and detention were
originally, or have become subsequently, entirely illegal; the
other, where he admits the legality of the arrest and detention,
but claims the right to give bail for his appearance to meet the
charges upon which the arrest and detention are based, and not
to be absolutely discharged. But in both kinds, we think, the
statute authorizes the judge hearing the application to cause
notice to be given to the party interested in resisting it, or his
attorney, (Secs. 28–30, p. 932;) to summon witnesses to testify
in the premises, (Sec. 17, p. 930;) and to fully investigate the
case. (See the provisions of the *habeas corpus* act generally, Rev.
Stat. p. 927.) Such being the fact, the objections of the English
judges, that they cannot get at the evidence necessary to a correct
understanding of the case, does not apply here; for, though the
evidence given to the grand jury cannot be laid before the
judge, yet the witnesses themselves can be summoned and
examined by him. * * * On the other hand indictments
are found upon *ex parte* testimony, and hence often upon
an incorrect understanding of the case; and, further, upon an
indictment for murder in the first degree, the accused may be
convicted of murder in the first or second degree, or of man-
slaughter. * * * An indictment for murder in the first
degree is therefore, in reality, an indictment for some one of
three offenses, upon either of which the defendant may, accord-
ing to the evidence, be convicted. Prosecuting attorneys are
consequently tempted, as a matter of policy, to draw their
indictments covering the highest offense, thus including the
inferior, rather than for either of the lower, which does not
include the superior. The indictment, therefore, should not
be taken as conclusive of the grade of offense in determining

the question of bail. After a party was indicted for a crime of which the court had jurisdiction, a judge could not, of course, wholly discharge him; for he would be bound to answer to the indictment. He could only permit him to give bail for his appearance for trial. Nor, we may remark, would the opinion of the judge, on the hearing of the *habeas corpus* application, as to the character of the crime, be a matter to come before the court or jury on the trial upon the indictment." Referring to that decision in *People* v. *Tinder*, 19 Cal. 547, 81 Am. Dec. 77, Mr. Justice Field said: "In Indiana the supreme court held that the statute of the state authorized, on application for bail, an examination of witnesses and a full investigation of the case. The court also held that as, under an indictment for murder in the first degree, the accused might be convicted of murder in the first or in the second degree or manslaughter, it should not be taken as conclusive of the grade of the offense in determining the question of bail. As to the first ground, it is sufficient to say that we have no such statute in this state; and, as to the second ground, it does not strike us as possessing any force. Though it is true, under an indictment for murder in the first degree, the accused may be convicted of a less offense, the grand jury have no right to present, and we are not to presume that they have presented, an indictment of that character, unless the evidence before them, explained or uncontradicted, would warrant, in their judgment, a conviction of the offense in that degree. The indictment is their finding that of the offense designated, in its character and degree, the defendant is guilty. And we agree with Mr. Justice Sutherland, *ex parte Tayloe*, 5 Cow. 56, that 'an indictment must be taken as conclusive upon the degree of the crime' on application for bail."

No person appreciates and admires the judicial ability of Justice Field more than myself. But it seems to me that he failed to give satisfactory answer to the arguments in Lumm's case, whether they were entirely sound or not. And it should be remarked, in this connection, that Mr. Justice Sutherland's statement that "the indictment must be taken as conclusive upon the degree of crime" is pure *dictum*, because Tyler had not been indicted, and the court, upon his application for bail, did not examine the depositions taken before the coroner. Besides, in Tinder's case, it is admitted that, under "special and extraordinary circumstances" in applications for bail, courts

or judges may look beyond the indictment. Why except such cases if the indictment precludes all inquiry? Every judge and lawyer of experience knows it is common practice, in cases of homicide, to indict for murder in the first degree. So common is it that the presúmption spoken of by Justice Field, that the indictment charges the true crime, is at least greatly shaken. It is true that in *Hyder's Case*, 2 Parker Crim. R. 570, also referred to by Justice Field, the defendants, who had been indicted for murder, were not permitted to furnish proof, by affidavit or oral testimony, beyond that taken before the coroner and the grand jury, on which the indictment was found, to show their innocence as affecting the question of bail, for the reason that such a rule of practice would, in effect, "transform a motion for bail into an examination into the guilt or innocence of · the prisoners." Yet, said the court: "The power of the court to bail is unquestioned. But the principles which will guide the court in the exercise of this power have been well established, and will be recognized here as the true rule by which to be governed. It has been said that in the higher class of offenses, particularly of a capital nature, a court will not bail after indictment, although they may before. This distinction arises from the fact that in one case the court have before it the testimony taken before the grand jury, or before the committing magistrate, and can thus, by an inspection of the testimony, be enabled to form some judgment as to the probable guilt or innocence; while in the other case the old rule did not permit the testimony before the grand jury to be disclosed, and the court was therefore, after indictment, unable to say on what proof it had been found." After referring to certain cases showing the distinction stated, the court adds: "Other instances to the same effect might be cited, all showing that the distinction made between bailing in capital cases, before or after indictment, has been founded on the reasons above given; that, before indictment, the court have access to the depositions and testimony on which the charge is based, and in other cases could not, because the grand jury were required to keep the testimony before it secret; and the court, having no means of inferring otherwise, would therefore always imply that the grand jury had not indicted on · insufficient proof, and so refuse to bail. Such difficulty, however, does not exist in this case. It is provided by 2 Rev. Stat. 724,

Sec. 30, that 'every grand jury may appoint one of their number to be a clerk thereof, to preserve minutes of their proceedings, and of the evidence given before them,' etc.; which was done here; and the whole evidence taken before the grand jury, who found this bill, it is admitted, is before the court, consisting of a record of the testimony taken before the coroner's jury, which was also read before the grand jury, together with a full record of all other facts testified to before the grand jury. The question of bail is therefore open to consideration, to the same extent as it would be if applied for before indictment, for the court knew on what testimony this indictment was found." The court proceeded to examine the testimony, and found that, as to three, the evidence would not justify conviction of the offense charged, and admitted them to bail. As to two others, the court said: "As regards Irving and Morrissey, I must go still further, and say that, upon the testimony, I am entirely clear there is not only none on which a conviction can be had, but that the proof did not warrant the finding of the indictment. Whatever may have been the errors or follies of either Irving or Morrissey, it will not answer to allow of a precedent so dangerous to the liberty of the citizen as that of upholding an indictment based on testimony so utterly insufficient; and while the grand jury, in the discharge of its most responsible and important duties, will always have the firm and steady support of this court, the court must with equal firmness and fidelity guard the personal rights of the citizen against the consequences of so dangerous a precedent as that of sustaining or favoring an indictment, the finding of which is so utterly unwarranted by the proof." Irving's bail, that had already been fixed, was allowed to remain, and Morrissey was admitted to bail in the sum of ten thousand dollars. Two others were denied bail. And yet this opinion is quoted to show that the finding of an indictment is conclusive of the defendant's guilt of a capital offense. I have quoted from it thus liberally for the purpose of showing the reason of the rule followed in so many English and American cases, not to go behind the indictment in applications for bail in capital cases; that is to say, from want of power, because upon such application no means were provided for getting the evidence before the court or judge. But our statute provides that, after indictment, "the defendant, if the offense be punishable with death, when arrested under the warrant,

shall be held in custody by the sheriff of the county in which the indictment is found, unless admitted to bail on an examination upon a writ of *habeas corpus.*" (Gen. Stat. 4141, 4389.) And our *habeas corpus* act gives full power to the judge who grants the writ " to require and compel the attendance of witnesses by process of subpœna and attachments, and to do and perform all other acts and things necessary to a full and fair hearing and determination of the case." (Gen. Stat. 3687.) We have seen what construction and effect the court, in Lumm's case, *supra*, gave to the Indiana statute, of which ours is nearly an exact copy; that is to say, that the power to bring witnesses removed the objection made by the English judges after indictment, just as, in Hyler's case, the statute providing for the preservation of the evidence taken before the grand jury performed the same office.

There is nothing in our constitution or laws prohibiting in terms or by necessary implication, an examination of the evidence for or against a person charged by indictment with an offense punishable with death. But the constitution and laws regulating criminal proceedings must be construed together; and from them, and according to their letter and spirit, a system of practice should be established, which, if possible, will insure to every accused person his constitutional rights, without giving to one person or body of persons the functions that, under the constitution and laws, are intended to be exercised by others. It is the duty of grand juries to indict when all the legal evidence taken before them is such, as in their judgment, would, if unexplained or uncontradicted, warrant a conviction by a trial jury. They ought not to charge the accused with murder in the first degree, if the evidence will only sustain a conviction for murder in the second degree or manslaughter; and in a proceeding like this it will be presumed that they have not done so. And although every person accused of a capital offense is, at any time before conviction, entitled to be admitted to bail if the proof of his guilt of murder in the first degree is not evident, or the presumption of it is not great, still, in my opinion, in ordinary cases, where the proof of guilt is to be found in many different facts, and especially when the evidence in the case is conflicting, it is, and always has been, the peculiar province of the trial jury to discriminate and decide whether the offense committed is murder in the first degree or second,

or manslaughter; and in such cases this power ought not to be exercised by courts or judges on application for bail. If I understand it correctly, the review of Judge Cowen's opinion in *People* v. *McLeod*, 1 Hill, 377, 37 Am. Dec. 328, by Judge Tallmadge, in 26 Wend. 663, 697, expresses my view of the proper practice. Although not authority like a decision of court, it has the full approval of Chancellor Kent, Chief Justice Spencer, Judge Sherman, Chief Justice Gibson, Prof. Greenleaf, Daniel Webster and other great legal lights. At page 697, he says: "The true rule upon the subject of bail or discharge after indictment for murder undoubtedly is for the judge to refuse to bail or discharge upon any affidavit or proof that is *susceptible of being controverted on the other side.* When, however, the prisoner's evidence is of that positive and certain character that it cannot be 'gainsaid,' then the prisoner is entitled to be bailed or discharged; as in the case where the man supposed to be murdered is living, where the prisoner has been tried and acquitted of the same offense, or where the supposed murder was a homicide committed in a war between two nations. As applicable to the case under consideration, if the attack on the Caroline was authorized and sanctioned by the Canadian authorities and the British government, the evidence of such authorization, furnished by the British government and the United States, is of that conclusive and recorded character that it cannot be controverted at the tribunal, if produced at a trial of the indictment. It would show a state of war between the two countries of the 'imperfect sort' stated by Rutherford, but nevertheless a 'lawful war,' which furnishes, under the law of nations, an immunity to McLeod, a soldier engaged in it. If such would be the effect of that evidence on a trial of the indictment, then, on *habeas corpus*, the same incontrovertible evidence authorizes a discharge by the court." I do not understand Judge Tallmadge to say that, upon application for bail after indictment for murder, the judge should refuse to bail if the other side should say simply, "I deny defendant's affidavits," because that may be done in any case. He did not mean to say that, if a person is indicted for a crime for which he has once been tried and acquitted, bail should be refused simply because the district attorney denies the former trial and acquittal. He meant that, if the accused could show by such indisputable evidence as the record of a former trial and

acquittal, which the state could not controvert in fact at the trial, then the presumption raised by the indictment was overthrown, and bail ought to be allowed. On the contrary, if the question of a defendant's guilt of a capital offense hinges upon a fact involved in doubt,—as if the existence of a fact on which his guilt or innocence of the offense charged in the indictment depends, may from the evidence be found one way or the other, —then bail should be refused. But if his guilt of a capital offense depends upon a fact that is admitted by the state not to exist, or if its non-existence is shown by all the evidence in the case; or if he is innocent of a capital offense upon a certain state of facts, and those facts are admitted, or if all the evidence in the case proves them to be true,—then the accused is entitled to bail. Nor does it matter that the grand jury, by finding the indictment, presumably has passed upon the fact on which the prisoner's guilt of a capital offense depends, in whole or part, and has found against him thereon.

In *Tinder's Case* it is said: "The existence of the party charged to have been murdered, would constitute an extraordinary circumstance in any case, and the allegation, under oath, of his existence in the application for bail, would justify, if not require, a careful examination of the evidence offered. So, too, would a clear confession by another of the commission of the offense for which defendant is indicted." Still, before the grand jury can find an indictment for murder in the first degree, they must find that a homicide has been committed, and by the accused. Justice Field further says: "Bail may also be taken, after indictment found, where no such special and extraordinary circumstances exist as we have mentioned. Thus it may be taken upon the admission of the public prosecutor that the evidence which he can produce will not warrant a conviction of a capital offense, or upon his admission of facts from which it is evident no such conviction can take place." But suppose the public prosecutor will not make the admission stated, although the facts justify him in so doing? It may be he is not satisfied in his own mind as to the degree of the offense, and that he does not wish to assume the responsibility of deciding. He may refuse to admit facts, although they exist, "from which it is evident that no conviction of a capital offense can be had." He may say: "Here is an indictment charging murder in the first degree, and that is sufficient until

the defendant can show a case entitling him to go behind the indictment, and even then he must remove the presumption raised by it." No power on earth can compel a public prosecutor to admit facts if he is unwilling to do so; and yet, if all the evidence in the case shows the existence of a fact from which it is evident no conviction of a capital offense can be had, why is there not the same reason for admitting to bail as there would be if the public prosecutor should admit it? When it is admitted that a homicide, if it was committed under certain circumstances, amounts to manslaughter only, and the state's attorney will not admit such circumstances, how is the accused to obtain his constitutional rights if he cannot do so by alleging in his petition the exculpating facts and circumstances, and offering to show their existence, not by preponderance of evidence, but by all of it? Such was the case presented to me at the hearing upon this application, and upon which I granted leave to present the oral testimony of all the witnesses examined before the grand jury, and any others the district attorney might suggest, touching the allegations of the amended petition, to the end that defendant might show, if he could, that all the evidence in the case showed that, under the statute referred to, he was not guilty of a capital crime. Justice Field and Judge Tallmadge have by no means exhausted the list of cases wherein there are or may be special and extraordinary circumstances permitting evidence *aliunde* the indictment. I think this case, as presented, belongs to the same class.

It now remains to give my conclusions upon the testimony given, together with the indictment, in connection with the statute under which defendant claims the offense charged can be no greater than manslaughter. (Gen. Stat. 4602.) It is proper for me to give my construction of this statute for the purposes of this proceeding; but, in view of the fact that the case will hereafter be tried by a jury, I will not run the risk of doing injury to the defendant or the state by commenting upon the evidence, which I have examined with great care. For present purposes the statute may be epitomized as follows: "If any two persons, upon previous concert and agreement, fight one with the other, with deadly weapons or without them, and death ensues to either party in such fight, or if either party dies from any injuries received in such fight, within a year and a day, the person causing such death by fighting shall be

deemed guilty of manslaughter, and punished accordingly." Before petitioner can bring this case within the influence of the statute under consideration, in this proceeding, it must appear by the evidence, without material conflict—*first*, that there was a previous agreement between himself and the deceased to fight; and, *second*, that each did fight the other. According to my idea of the meaning of the words, "fight one with the other," there is, to say the least, a great conflict of evidence as to whether there was such a fight, and as to whether the deceased fought at all. Another question presented by some of the evidence was referred to at the hearing, which I will not discuss. The jury must determine it. (See *State* v. *Hildreth*, 9 Ired. 436 *et seq.*; 51 Am. Dec. 364; *Wilson* v. *State*, 4 Tex. App. 643.) The petitioner is remanded.