[No. 2306]

## In the Matter of the Application of W. A. NAGEL for a Writ of Habeas Corpus.

[167 Pac. 689]

1. Habeas Corpus—Evidence—Bailable Offense.
    The voluntary statement of petitioner standing in the record uncontradicted, together with other evidence tending to connect him with the death of deceased, *held* sufficient to warrant the court in denying bail, within Const. art. 1, sec. 7, denying bail in capital cases when the proof is evident or the presumption great.

2. Bail—Bailable Offenses—Discretion of Court.
    In capital cases, the court may grant bail where peculiar circumstances appear, or where the court in the exercise of sound judicial discretion determines that the proof is not evident and the presumption is not sufficiently great.

Application of W. A. Nagel for a writ of *habeas corpus*. **Denied.**

*Mack & Green,* for Petitioner.

*J. H. White,* District Attorney, and *Leonard B. Fowler,* for Respondent.

By the Court, McCarran, C. J.:

This is an original proceeding in *habeas corpus*.

The petitioner, W. A. Nagel, is held on commitment issuing out of the justice's court of Rawhide township, Mineral County, State of Nevada, by F. B. Balzar, sheriff of said county. Said commitment is as follows:

"To the Sheriff of the County of Mineral: An order having been made this day by me that W. A. Nagel be held to answer on the charge of murder, committed in said township and county, on or about the 26th day of August, 1917, you are commanded to receive him in your custody and detain him until he is legally discharged, and to be committed to the custody of the sheriff of said county. Dated this 14th day of September. Alexander Proskey, Justice of the Peace of Said Township."

By these proceedings petitioner seeks to be admitted to bail. Article 1, section 7, of the constitution provides:

"All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great."

In furtherance of his application for release on bail, petitioner filed in this court a transcript of the proceedings before the committing magistrate in Rawhide township. Petitioner relies entirely upon this transcript, and contends that this transcript discloses a lack of evident proof and the absence of great presumption. In view of the fact that defendant must appear for trial before a jury in the district court, it might be improper for this tribunal to pass in detail upon the weight or conclusiveness of the evidence as set forth in the record of the committing magistrate. Any comment which we may deem necessary to make here is not to be regarded as passing upon the conclusiveness of the evidence as it is before us in the record.

The party deceased, whose death petitioner is accused of producing, appears to have made a number of statements immediately prior to her death as to the cause of her injuries and as to the parties who produced them. Several witnesses testified that the deceased stated that her injuries had been received at the hands of a Mrs. Rose. In the testimony of the witness Mabel Rollins we find the following:

"Q. Will you state, as near as you can remember, the exact words used by Mrs. Kelly, in answer to Mrs. Flynn's inquiry? A. She said Mrs. Byrd—who, every time after she named her, she called her Mrs. Rose— she said that Mrs. Byrd hit her with a cleaver, and Mr. Nagel said, 'Go to it.' "

From the testimony of the witness H. W. Guinan it appears that, in a conversation had with the witness the day following that on which the deceased received the injuries that caused her death, petitioner made the following voluntary statement:

"Q. Have you had more than one conversation with Mr. Nagel after this affair? A. I did.

"Q. You can state when and where, and what was said. A. The next conversation I had with Mr. Nagel

was in front of what is called Nagel's store on Tuesday morning. That would be August 28th. I was sitting on a box in front of Kelly's store. Mr. Nagel, who was at the Yellowstone, came across to where I was sitting, and I told him I wanted to send a telegram to Fallon about a business in which we were both concerned. He told me Mrs. Kelly was sick in bed, and that I would not be able to send my message that day. Then in the course of the conversation that followed he told me Mrs. Kelly (the deceased) was blaming those women, mentioning Mrs. Haynes and Mrs. Byrd, for the injury she had received. But, he said, 'I want you to understand, and everybody to understand, that I alone am responsible for what happened to Mrs. Kelly. I wanted to show that God damn bitch that she could not come into my store and throw things around as she threw them around in Joe Kelly's store.' That is the size and substance of the conversation."

The record discloses that the deceased, Mrs. Kelly, received injuries in or about the store or on the premises owned and conducted by petitioner in the town of Rawhide. The injuries, as testified to by the autopsy surgeon, consisted of wounds and lacerations on the head. The deceased was found by one of the witnesses, who testified for the state, in a dazed and bleeding condition, on the sidewalk or street immediately in front of the premises of petitioner.

As to whether or not there is evident proof or great presumption of a capital offense having been committed by petitioner, it will suffice, we think, to apply the rule laid down in this court by Mr. Chief Justice Leonard in the case of *Ex Parte Finlen*, 20 Nev. 141, at page 151, 18 Pac. 827, at page 832. There the learned justice quoted approvingly from the review of Judge Cowen's opinion in the case of *People* v. *McLeod,* 1 Hill, N. Y. 377, 37 Am. Dec. 328, as follows:

"The true rule upon the subject of bail or discharge after indictment for murder undoubtedly is for the judge to refuse to bail or discharge upon any affidavit or proof

that is susceptible of being controverted on the other side."

Later in the opinion, Mr. Chief Justice Leonard stated the rule which we deem most applicable here as follows:

"If the question of a defendant's guilt of a capital offense hinges upon a fact involved in doubt, as if the existence of a fact on which his guilt or innocence of the offense charged in the indictment depends may from the evidence be found one way or the other, then bail should be refused."

The voluntary statement of petitioner, made to a third party after the occurrences at which deceased received the mortal injuries, stands here in the record, as it stood before the committing magistrate, undenied.

1. Counsel for petitioner contends that this testimony is unbelievable, and that no jury would give credence to the statements. Of this we are not presumed to judge in proceedings of this character. This statement, standing in the record uncontradicted, together with other evidence tending to connect petitioner with the death of the deceased, is, in our judgment, sufficient to warrant this court in saying that the proof is sufficiently evident and the presumption is sufficiently great to bring the case within the inhibition of section 7 of article 1 of the constitution, denying bail in capital offenses. The mere fact that a crime punishable by death may also be punishable by imprisonment does not entitle the defendant as a matter of right to be admitted to bail. (*Ex Parte Dusenberry*, 97 Mo. 504, 11 S. W. 217.) Where it cannot be known until after conviction whether death will be the punishment, the question in legal contemplation, on the application for bail, is whether the offense is of a character that may be punished capitally. (*Ex Parte McAnally*, 53 Ala. 495, 25 Am. Rep. 646.)

2. In capital cases, it is generally held that constitutional exceptions, such as ours, merely deprive the prisoner of his right to demand bail guaranteed under all cases, and leave with the court the discretionary

power vested in it at common law; therefore the court may grant bail where peculiar circumstances appear, or where the court, in the exercise of sound judicial discretion, determines that the proof is not evident and the presumption is not sufficiently great. (3 R. C. L. sec. 5.)

The writ as prayed for will be denied. Petitioner is remanded to the custody of the sheriff of Mineral County.

It is so ordered.