CHARLES FORD, Appellant, v. E. G. DILLEY, Sheriff, Appellee.

APPEAL AND ERROR: Right of Review—Appeal by Successful
1  Party—Habeas Corpus. An appeal will not lie by a wholly suc-
cessful party, even though an appeal is prosecuted by the de-
feated one. So *held* in habeas corpus against a sheriff, the appli-
cation for release having been denied.

APPEAL AND ERROR: Right of Review—Errors Against Appellee
2  —When Considered. An *appellee* may, on appellant's appeal,
specify wherein he himself was so erred against by the lower
court that a correction of such error neutralizes any error against
appellant, and may demonstrate that the judgment which he
(appellee) obtained was correct, notwithstanding the errors
against appellant.

PRINCIPLE APPLIED: Plaintiff, indicted for first degree
murder and denied bail, sought, on habeas corpus, to obtain judg-
ment admitting him to bail. Such judgment was denied, and
plaintiff was remanded to the custody of the defendant sheriff.
Plaintiff appealed. An important question on appeal was whether
the evidence and showing were such as to establish that "the
proof (of guilt) was evident or the presumption (of guilt) was
great". *Appellee* urged that he suffered error, in that the evi-
dence and showing were erroneously curtailed (a) by the refusal
of the lower court to consider that plaintiff was under other
indictments upon which he had been admitted to bail, (b) by
the order of the lower court striking from appellee's answer the
allegation that plaintiff's purpose in being admitted to bail was
to intimidate witnesses, and (c) by the refusal of the lower
court to hold that plaintiff's right to bail had been adjudicated
in a former proceeding. *Held*, these alleged errors, urged by
appellee, should be considered; because, if held to be error, they
might demonstrate that the judgment of the lower court was
right, even though appellant had suffered error in other
particulars.

BAIL: Capital Offense—Proof and Presumption—Evidence—Other
3  Indictments—Habeas Corpus. In an application for an order to
admit to bail one under indictment for a capital offense, it is
entirely immaterial that such party was already under indict-
ment for several other offenses on which he had been admitted
to bail.

BAIL: Capital Offense—"Purpose" In Seeking Bail. In an applica-
4  tion for an order to admit to bail one under indictment, an alle-

gation in the answer that plaintiff's purpose in being admitted to bail is to intimidate witnesses should be stricken, the right to bail being a specified constitutional right, and detention without bail, when applicant is entitled thereto, not being a substitute for a peace bond.

**BAIL: Application for Bail—Motion—Habeas Corpus—Adjudication.**
5 A ruling denying a motion for admission to bail is not an adjudication of the right to bail, when such ruling is "without prejudice to said defendant's right to present said matter by habeas corpus", such latter entry not being perfunctory.

**HABEAS CORPUS: When Writ Lies—Adjudication—Motion Deny-**
6 ing Bail. No proceeding bars an application in habeas corpus, except a prior proceeding in habeas corpus. So *held* in a proceeding in habeas corpus for an order admitting applicant to bail, it being contended that the denial of a preceding motion to be admitted to bail acted as an adjudication.

**HABEAS CORPUS: Stipulation—Evidence—Minutes of Testimony.**
7 A stipulation that certain minutes of testimony were those returned with a certain indictment is effective, no attempt being made to agree to the interpretation to be placed thereon.

**BAIL: Capital Offense—"Proof Evident and Presumption Great"—**
8 Burden of Proof—Indictment As Evidence. One under indictment for a capital offense is entitled to bail before conviction unless "the proof (of guilt) is evident or the presumption (of guilt) great". (Const., Art. 1, Sec. 12.) The burden to show that such proof is "evident" or such presumption is "great" rests on the State, or on those representing the State. *The indictment itself is no evidence whatever of the guilt of the accused and raises no presumption of his guilt.*

DEEMER and PRESTON, JJ., dissent.

**EVIDENCE: Burden of Proof—Murder—Denying Bail As Exception.**
9 He who relies on an exception to a general rule has the burden of proof to show that the exception exists. So *held* on an application for admission to bail under an indictment for a capital offense, the burden to show that "the proof was evident or the presumption great" being placed on the State; because to grant bail is the rule, and to refuse bail is the exception.

DEEMER and PRESTON, JJ., dissent as to application of principle.

**EVIDENCE: Burden of Proof—Natural Burden of Proof—Facts Pe-**
10 culiarly Within Knowledge of Party. When a fact is peculiarly within the knowledge of one party, he, as a general rule, has the burden to show such fact. So *held* in placing upon the state the

burden to show that the proof of guilt of one indicted for murder in first degree was evident, or the presumption great, in order to defeat an application for admission to bail.

DEEMER and PRESTON, JJ., dissent as to application of principle.

**BAIL: Application for Bail—Procedure.** It is pointed out, in a general way, that, on the application of one under indictment for a capital offense to be admitted to bail, the procedure should be:

1. The State, having the burden of showing that the proof of guilt is *evident* or the presumption *great*, should first offer its evidence. This may consist of (a) the minutes of testimony returned with the indictment, or (b) the testimony of such grand jury witnesses called anew, or (c) both such minutes and the testimony of recalled witnesses, or (d) the testimony of any other witness.

2. The accused may then, in effect, demur to the State's showing as insufficient to justify denial of bail, or

3. The accused may present his counter-proof, and

4. The State may offer rebuttal.

**BAIL: Capital Offense—Proof and Presumption—Evidence—Minutes of Testimony—Competency.** The minutes of testimony returned with an indictment for a capital offense are competent evidence, in an application by the accused to be admitted to bail, *for either the State or the accused.* In other words, the State may rely on them as justifying denial of bail, and accused may rely on them as wholly insufficient to justify such denial.

**BAIL: Capital Offense—Proof and Presumption—Evidence—Notice of Additional Testimony—Competency.** A notice of additional testimony which the county attorney expects to introduce on the trial of one accused of a capital offense (Sec. 5373, Code Sup., 1913) is wholly incompetent, on an application by accused to be admitted to bail, to show that the guilt of the accused is "evident" or that the presumption of his guilt is "great".

DEEMER and PRESTON, JJ., dissent.

**APPEAL AND ERROR: Review—Scope—Evidence—Failure to Move to Strike.** In order to secure a review of objections to the reception of evidence, it is not necessary that the record show that such objections were followed by a motion to strike such evidence from the record.

**GRAND JURY: Notice of Additional Testimony by Witness Before Grand Jury—Effect.** The statute (Sec. 5373, Code Sup., 1913) authorizes no notice of additional testimony in a criminal proceeding, except of the testimony by persons who were not examined before the grand jury, as provided by said section.

**BAIL:** Capital Offense—Application for Bail—Evidence—"Public 16 Opinion". Plea that, in an application for admission to bail, the court may, in effect, give heed to public opinion, rebuked.

**BAIL:** Capital Offense—Application for Bail—Evidence. In an ap- 17 plication for admission to bail on a charge of first degree murder, *held*, the fact that petitioner was charged as an accessory affected nothing.

**BAIL:** Capital Offense—Application for Bail—Improper Test To De- 18 termine. The so-called Pennsylvania test to determine whether bail should or should not be granted in capital charges is rejected *in toto* to wit: "Refuse bail in a case of malicious homicide, where the judge would sustain a capital conviction pronounced by a jury, on evidence of guilt such as that exhibited on the application for bail, and allow bail where the prosecutor's evidence is of less efficiency."

**BAIL:** Capital Offense—"Proof Evident or Presumption Great"— 19 General Test. (1) Proof of guilt of a capital offense is "evident", within the meaning of the constitutional exception to the granting of bail, only when the evidence, on its face and unexplained, excludes every other reasonable conclusion than that of the guilt of the accused. *In such case only should bail be refused.*

(2) The presumption of guilt of a capital offense is "great", within the meaning of such constitutional exception, only when the circumstances testified to are such that the inference of guilt naturally to be drawn therefrom is strong, clear and convincing to the unbiased judgment and is such as to exclude all reasonable probability of any other conclusion. *In such case only should bail be refused.*

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

FRIDAY, FEBRUARY 18, 1916.

APPEAL by petitioner from order in habeas corpus denying bail on indictment for murder in the first degree. Respondent attempts cross-appeal from trial rulings against him.— *Reversed.*

*Oliver, Harding & Oliver,* for appellant.

*George Cosson,* Attorney General, *O. T. Naglestad,* County Attorney and *J. W. Kindig* and *D. G. Mullan,* Assistant County Attorneys, for appellee.

SALINGER, J.—I. The defendant obtained all he sought, an order denying the application of plaintiff. What has he to appeal from, since petitioner was denied bail, and kept in custody of defendant? Suppose petitioner had not appealed. Could we have entertained an appeal of defendant to have it determined whether rulings which did not prevent defendant from winning were correct? If not, neither have we power to review those rulings, merely because the losing party has appealed. We are of opinion we have no jurisdiction to entertain the appeal of defendant.

1. APPEAL AND ERROR: right of review: appeal by successful party: habeas corpus.

II. But it does not follow, of necessity, that we are relieved from a consideration of the propriety of the said rulings. The general rule that one who is satisfied with the result below has no occasion to and may not urge error, is bottomed on the thought that one who succeeded in spite of all rulings against him has no occasion to complain, because, manifestly, he has suffered no prejudice. A rule resting on such foundation may not be applied where it is apparent that the successful litigant *will* suffer prejudice if review of errors against him be denied. Where the record exhibits errors against appellee from the commission of which he cannot appeal, and such errors make harmless the errors against appellant, it *would* work prejudice to appellee to take away the judgment in his favor, which is, on the whole record, a right judgment, by the method of refusing to pass upon whether the claim of error against appellee was well founded. We think we have settled in terms, and at all events in principle, that, where error against appellee may make harmless the assignments of appellant, we should determine, in the first appeal that presents this situation, whether any such error has been committed against appellee. See *Vorhees v. Arnold,* 108 Iowa, at 85, followed in *Kelso v. Wright,* 110 Iowa, at 565; and *Royer v. King's C. P. Co.,* 147 Iowa 277, 281. And the principle is clearly asserted

2. APPEAL AND ERROR: right of review: errors against appellee: when considered.

in *Campbell v. Park,* 128 Iowa 181, which holds that, in reviewing the correctness of a ruling directing a verdict, we consider, at least for the losing party, all evidence that was proper to go to the jury, though it was stricken out below.

The contrary rule can effectuate nothing but a promotion of a multiplicity of suits and appeals. One who loses a judgment which can be found to be erroneous only upon excluding from consideration errors against him, would simply have to carry the burden of retrial and re-appeal until the error against him was not repeated, or if repeated, until judgment below went against him. Then, and not until then, could he get a pronouncement that there was error to his prejudice in excluding testimony by him offered—precisely what could be accomplished on the very first appeal, by considering what bearing the excluded testimony has on whether an appealed judgment was right upon all the proper evidence, admitted or excluded. On any other rule, appellee would be in better case if he were defeated below and came here as appellant on the very first appeal. Any other rule would compel appellee to pay for "victory" with a silence that takes such victory from him. We think appellee may, on the appeal against him, urge that, upon the record, he has so been erred against as that, if this is corrected, the judgment is right, although errors were committed against appellant which, if there were not such counter-errors, would require a reversal. In essence, it is but proving by the record, affirmatively, that errors complained of worked no prejudice in law.

III. We think it was not error to refuse to consider that petitioner is in custody under other indictments as to which he has been admitted to bail. That bail has been allowed on the other indictments is no reason against an order admitting to bail on the indictment for murder, also. Suppose one had been admitted to bail on three indictments and denied bail on a fourth, which was confessedly bailable, what bearing has the admitting to bail which

3. BAIL: capital offense: proof and presumption: evidence: other indictments: habeas corpus.

was right upon saving the denial, which was wrong? If nothing else will avail, it is certainly a sufficient reason for not giving bail on the three indictments that to give it, while bail was refused on the other, will not give liberty.

### 2.

It was right to strike out allegations that the purpose of petitioner in applying for bail was to intimidate witnesses for the State. The Constitution gives right to bail, unless the evidence of guilt be of a certain degree. And if entitled to bail, detention without bail is not a substitute for a peace bond, or a method of crime prevention.

4. BAIL: capital offense: "purpose" in seeking bail.

### 3.

The plea of adjudication is not tenable, even if it be assumed that appeal lies from a denial of a motion to admit to bail. While the motion was denied, it was with express statement that the ruling was "without prejudice to said defendant's right to present said matter by habeas corpus". This is, in effect, a ruling in abatement, rather than on the merits—in effect, a decision that the right sought should be obtained in some proceeding other than a motion to be allowed bail; and rulings other than on the merits are not adjudications.

5. BAIL: application for bail: motion: habeas corpus: adjudication.

Such reservations are not idle. Courts of last resort make such. For instance, in *In re West*, (N. D.) 88 N. W., at 90, the Supreme Court of North Dakota denied an application for bail "for the time being", with the statement that the refusal is not to operate as a bar to any future application. Moreover, the statute itself has provided what alone shall stand in the way of an application in habeas corpus, and that is, that there shall not have been denied an earlier application in

6. HABEAS CORPUS: when writ lies: adjudication: motion denying bail.

habeas corpus. It is competent for the legislature to enact that what is else concededly an adjudication shall not bar an application in habeas corpus. It can enact, as it has done as to some cases, that successive applications in habeas corpus may be entertained. In effect, the statute, as said, makes such ruling as was here had inoperative as a bar against this application. And, additionally, rulings on motions made pending suit are not, in a strict sense, an adjudication. See *In re Ellenberger,* 171 Iowa 225, 237.

We conclude that, in the respects complained of, no error was committed against the appellee.

## Division II.

I. We think the stipulations made by the parties are effective; and this includes the failure of defendant to object to the minutes of the testimony before the grand jury, when put in evidence. This, notwithstanding the broad language of *State v. Rosencrans,* 65 Iowa, at 384. Were we to give to all *said* therein a literal meaning, it would not be permitted the defendant in habeas corpus to test the petition by demurrer. Properly construed and restricted to the record in the case, the decision is right. It but rules that, since the public is concerned, the defendant sheriff may not, by agreeing to an interpretation of the evidence asserted in the petition, and agreeing that defendant is held merely because of such evidence, so construed, in effect agree that the prisoner be discharged. If there is anything in the *Rosencrans* case that compels a defendant to put the plaintiff to the proof of facts admitted by plaintiff which will defeat plaintiff unless plaintiff avoids them, it should be so far overruled. But concessions may not settle for the court what public law is. See *Tuttle v. Pockert,* 147 Iowa, at 42, 43. One applicant for bail might not be able to get the concessions obtained by another, and the people of the state are entitled to know what is the

7. HABEAS CORPUS: stipulation: evidence: minutes of testimony.

law on public questions, rather than what we find it to be upon agreement of parties. The instant case proves the wisdom of not deciding on such basis. We find respondent urging that the minutes are, and also that they are not, entitled to consideration—and both sides so conceding and modifying and withdrawing and re-asserting concessions as that it would be highly perilous to build a holding upon admission. We therefore proceed by applying to the record what is our view of law and reason.

II.   Petitioner is not entitled to bail unless we can find on the record before us that the proof of his being guilty of a capital offense is less than evident, and the presumption of his being thus guilty, less than great.   Constitution, Art. 1, Sec. 12.   So far, the parties seem to agree; and if they disagree, they should not.   Who has the burden of proof, *here?*   But our answer here is no decision upon what probative weight should be given an order that one be taken into and kept in custody without bail, or an order denying a motion for bail, upon appellate review of such order, because no such question is presented on this record—a limitation of issues which the minority overlooks. In other words, what we decide is whether the mere existence of an indictment charging a capital offense puts the burden of proof upon the applicant for bail,—whether such presumption arises from the mere finding of such an indictment as that the burden is cast upon the person detained under such indictment to show, initially at least, and affirmatively, the negative fact that the proof of murder in the first degree is not evident nor the presumption thereof great. This inquiry is vital. For, if the mere existence of such indictment casts the burden on the accused,—and the person detaining the prisoner as an agent of the state is not estopped to say that the minutes of the evidence before the grand jury have no weight, or that they fail to disclose all the evidence that exists against the prisoner,—then petitioner may not be bailed by merely show-

8. BAIL: capital offense: "proof evident and presumption great": burden of proof: indictment as evidence.

ing that such evidence as went before the grand jury, or any other put in, falls short of the Constitution standard. On the other hand, if the State must take the initiative, then petitioner is entitled to bail if all the evidence put in is insufficient to meet that standard.

It is true, the courts of England declared, many years ago, that, because the evidence before a grand jury was not to be had before the court, the support for the indictment could not be judicially inquired into, and that hence no bail could be allowed where the right to bail depended upon the degree of proof by which a capital charge was sustained. This logically created a rule that the presumption for the capital indictment was conclusive against bail. This rule has been followed either wholly or partially in a number of the states of the Union. Out of forty-four cases examined, four hold that the presumption is conclusive; one leaves that open, with an intimation that the presumption is conclusive; one fails to decide, but intimates that the presumption is not conclusive; six hold that it is practically conclusive; seven say that it is not conclusive; seven, that the existence of such indictment makes a prima-facie case against bail; eight, that the indictment raises nothing but a naked rebuttable presumption; four hold that the indictment is an item of evidence on the whole case; and six affirm the presumption, but are difficult to fit into the classes just enumerated.

## 2.

The rule that raised presumption for the indictment of necessity created the sub-rule that petitioner in habeas corpus had the burden of proof. Since these rules were made, the evidence upon which the indictment rests has become obtainable by the courts, and many constitutions have been adopted, all of which, by clear implication, permit bail after indictment, and some of which expressly enlarge the time during which the right to bail exists, to cover any time before con-

viction. And there are later decisions than those foregoing, which put the burden on the respondent.

In *Ex parte Smith,* (Tex.) 5 S. W. 99, the Texas court, two to one, held that the burden is upon the accused. There was a most powerful dissent by the one judge, in which he confesses that he is responsible for earlier holdings counter to his dissent. Both majority and the dissenter seem to have overlooked *Ex parte Bramer,* 37 Tex., at 2, which had, in effect, wholly disavowed the English rule, by declaring that it was incorrect law to say that the indictment of itself makes a prima-facie case for the State. Be that as it may, *Ex parte Newman,* (Tex.) 41 S. W., at 629, expressly overrules the *Smith* case, and holds that the burden is on respondent. As will presently be seen, this is *not,* as the minority asserts, the only case that so holds.

*Newman's* case, the Texas decision that led in denying the common-law rule, proceeds on the reasoning (1) that, as the burden is on the State, the indictment furnishes no proof that petitioner is guilty of a capital offense; (2) if that be passed, the indictment in no view affords evidence that the proof of capital guilt is evident; (3) that to put the burden on applicant would require, in a case like this, that he go into the enemy's camp and examine the adversary's witnesses as his own, losing the right to cross-examine and to impeach, and that such a construction environs an applicant for bail with difficulties which it is believed the Constitution does not authorize.

The main ground of the argument is that the constitutional provision that all shall be bailable except for capital offenses when the proof is evident, makes a general rule in favor of bail; that, on application for bail, there is involved an exception to this general rule; that the exception is in favor of the State, unless the case be a capital one and the proof is evident of this fact; that, unless the proof is evident that the prisoner is guilty of a capital crime, he is entitled to bail; and that the party relying upon the exception must

prove it. The *Newman* case is followed in the case of *Ex parte Arthur*, (Tex.) 47 S. W. 365, wherein the State introduced the indictment and the .capias by which relator was arrested, and relator introduced no evidence except as to the amount of property owned by him, and the order denying bail was reversed.

*In re Haigler*, (Ariz.) 137 Pac., at 424, 425, asserts that bail must be granted unless the State has discharged "the burden imposed upon the State to show that the case of the accused comes within the exception prohibiting the allowance of bail"; and that, in deciding the application, it should be remembered "that to grant bail is the rule and the refusal of it is the exception". It is held that the finding of an indictment or filing an information does not add to the strength of the proof or the presumption to be drawn therefrom. *State ex rel. Murray v. District Court*, (Mont.) 90 Pac. 513, says that, by the Constitution of that state, "all persons are bailable except for capital offenses, when the proof is evident or the presumption great"; and that, therefore, if the county attorney does not "make some showing that the proof is evident or the presumption great, thus bringing the case within the exception mentioned in the Constitution", bail will be granted. In *State v. Kauffman*, (S. D.) 108 N. W. 246, it is said that a defendant is by statute presumed to be innocent until the contrary is proved.

To the extent that refusing bail is an exception, these are upheld in the cases of *Ex parte Stephenson*, (Tex.) 160 S. W. 77; *In re Losasso*, (Colo.) 24 Pac. 1080, 1081; *Ex parte Nathan*, (Fla.) 50 So. 38, 40; *Brown v. State*, (Ind.) 46 N. E. 34; *Ex parte Jones*, 55 Ind. 176; *People v. Tinder*, 19 Calif. 539; and by 5 Cyc. 65, 66.

### 3.

We must choose between these conflicting decisions. We must decide who here has the burden of proof, though the

petition declares that the evidence is insufficient to sustain a denial of bail. For petitioner may not concede the law away nor be held to prove needless allegations nor more than sufficient to prove a case, though more is alleged and not proven— a rule which the minority flouts as applied to concessions by petitioner, but finds useful in disregarding positions taken by the State—say the claim that the minutes of the evidence before the grand jury are good evidence.

We have to determine whether changes in conditions, and sound reason, put an end to treating the indictment as being any evidence whatsoever. We see no escape from so concluding and from going with the courts which hold that the burden of proof is upon the detainer. This we do because:

III. The English courts refused to go behind the indictment, and, contemporaneously reviewed commitments by magistrates, on habeas corpus. The sole basis of each of these positions was that in one case the evidence was secret, and in the other, obtainable. In *Losasso's* case, (Colo.) 24 Pac. 1080, 1081, it is said that this secrecy was the very first basis of the English rule. In *Lord Mohun's* case, 1 Salkead 104, the decision proceeded on the ground that "If a man be found guilty of murder by a grand jury [it may not be looked into], because the court cannot take notice of their evidence which they by their oath are bound to conceal". That this is the reason for the rule is said in *Rigdon v. State,* (Fla.) 26 So. 711; *Regina v. Andrews,* 2 Dowling & Loundes Pr. 10; *Lumm v. State,* 3 Porter (Ind.) at 294; *Ex parte Bryant,* 34 Ala. 270; Chitty's Criminal Law (1836) 111, 128, 129; *Rex v. Dalton,* 2 Strange 911; *Ex parte Tayloe,* 5 Cow. (N. Y.) 39, 56; *People v. McLeod,* 1 Hill 377*, 393 (37 Am. Dec. 328); *People v. Van Horne,* 8 Barb. 158, 163; Petersdorf on Bail (1824) 521; and *People v. Hyler,* 2 Parker Criminal Reports (N. Y.) 570, 571.

The courts of England pursued the strictly logical course. The evidence before the grand jury being a sealed book, the indictment raised a *conclusive* presumption, on application for

bail, that the official act of presenting indictment was sustained by sufficient evidence. Where the situation is still what it was in England when the English rule was declared, it is logical that this rule be still adhered to.

*Hight v. United States,* 1 Morris *407, followed the rule, in all strictness, holding that the presumption for the indictment is conclusive. The evidence before a grand jury was not then obtainable for use on habeas corpus. We should assume this for the case, rather than that it followed a rule based on secrecy after there was secrecy no longer. And it is the fact, the dissent notwithstanding, that page 151, Statutes of Iowa, 1843, Sec. 33, provides merely that "members of a grand jury may be required by a court of justice to testify as to the evidence given by a *witness* before said jury". These words are found in Code Section 5268, to which is added an expressed limitation which does not change the effect of what is added to, the addition being merely that the juror may be examined "for the purpose of ascertaining whether it (testimony of a witness before the grand jury) is consistent with that given by him before the court, or to disclose the same upon a charge of perjury against the witness". When *Hight's* case was decided, there was no statute providing for the preservation in any way of the evidence before the grand jury. The Statutes of 1843 permit merely what the present Section 5268 does: the ascertaining by one or more members of a grand jury of what *a witness* testified to, impeachment, and proof of falsity on charge of perjury.

### 2.

With no constitution to command bail at any time before conviction, and the evidence before the grand jury unobtainable, there was no logical half-way house for the English courts: the indictment was conclusive, no less. They were not only right, but thoroughly consistent. As will be seen later, in dealing with commitments when the evidence was obtainable, and for that reason, they gave the order of com-

mitment no weight. The evidence before the magistrate counted, and that only.

So there once existed conditions that raised a conclusive presumption for the indictment. Conditions may have so changed as that no presumption for it is permissible. But there have been and can be no conditions which justify a position midway. The cases group into (1) those that support the English rule because they adhere to it under the conditions which made that rule; (2) those that gave support to the rule when decided, but which are no longer authority, because those conditions have been changed in their jurisdictions; (3) cases which never did afford the rule any support, because decided under conditions differing from those that created the rule; (4) cases that never gave support to the rule, because they admit such change in condition, and thereupon commit the logical impossibility of affirming the rule, in part; and (5) cases that act upon the change in conditions and thereupon disavow the rule, *in toto*.

a. The *Hight* case affords the rule no support: first, because its reason for holding that the indictment raises a conclusive presumption because of the secrecy of the proceedings before the grand jury has been taken away by statute; second, because its construing the right to bail to end at indictment has been swept away by a constitutional change that permits bail at all times before conviction; and third, because, even if the evidence before the grand jury were still unobtainable, that only goes to the difficulty of entertaining an application for bail made after indictment, and does not obviate that the Constitution can abrogate any court-made rule, no matter if difficulties therefore arise— that "The Constitution, being the organic law, *ex propria vigore* removes (even) all legislative obstacles to the proper working of its provisions". It is significant, too, that, in the 71 years since *Hight's* case was decided, it has never been referred to in this jurisdiction.

b.   Cases like *Ex parte Bryant,* 34 Ala. * page 275, *Ex parte White,* 9 Ark., at 224, and *Ex parte Smith,* (Tex.) 5 S. W., at 110, which affirm the rule, give it no support in fact, because they hold that the rule is abrogated by the adoption of a Constitution that bail shall be granted which does not have the words "before conviction"—the thought being that, there being no words limiting to before indictment, this *ipso facto* abrogates a court-made rule which does so limit.

c.   The rule has no support by cases that affirm it, and affirm also that bail is the rule and denial of it the exception. And it seems undeniable that, under such constitutions as ours, bail is the rule; denying it, the exception. This being so, no sound argument can be made for the claim that the general rules governing the proof of exceptions shall not obtain here.

9. EVIDENCE: burden of proof: murder: denying bail as exception.

d.   It can have no real support by cases which recognize that the rule rests wholly on the inability to get the evidence before the grand jury, recognize that all this is no longer true, admit having statutes substantially like Code Section 5277, and then affirm the rule.   See *People v. Tinder,* 19 Calif. 539; *Hyler's* case, 2 Park. Crim. Rep. 570.

e.   The rule has no support in cases that affirm it and also condemn what must follow upon applying the rule— cases that put the burden on applicant and scout the idea that he should be obliged "first to produce the testimony which was made against him, and then, by the production of his own defensive testimony, to show that neither proof nor presumption was sufficient to hold him without bail".   *Ex parte Hammock,* 78 Ala. 414, 416.   And see *State v. Hedges,* (Ind.) 98 N. E., at 418; *Rigdon v. State,* (Fla.) 26 So. 713; *Ex parte Randon,* 12 Tex. App. 145; *Ex parte Floyd,* 60 Miss. 913.

f.   There is no support for the rule by cases which, though they themselves point out the changes that have oc-

curred, draw only one conclusion therefrom, to wit: that though all of the reason for the presumption is gone, half of the presumption survives. They follow up a concession that the foundation for making the indictment evidence is wholly destroyed, with making the indictment just enough evidence to call for rebuttal—require something to be rebutted which, upon their concession, should no longer be evidence.

It is regrettable that the voice of the minority felt compelled to speak without taking adequate time. There is no obligation that we shall decide before adequate investigation is had. Had proper time been appropriated, some of the cases which commit this logical *faux pas* might not have been cited, nor it been said that the *Hight* decision "cites the cases or many of them" (presumably cases for the English rule). The *Hight* decision is barren of citation, except of Petersdorf and Bacon's Abridgment.

### 3.

A commitment by a magistrate is at least the equal of, if not entitled to more consideration than, an indictment. Neither has the standing of a judgment. *In re Finlen,* (Nev.) 18 Pac., at 832. Though it is not the only reason, the fact that either may be reviewed on habeas corpus—a collateral attack—is sufficient to prove this. *Turney v. Barr,* 75 Iowa 758; *Shaw v. McHenry,* 52 Iowa 182, 184. It is illustrative of the attitude of the English courts that, though they usually refused bail after indictment, they did allow it in some cases wherein it appeared that public feeling ran high when the indictment was under consideration and voted—by presuming that the grand jury was swayed by passion and prejudice.

If presumptions are to be indulged, they should be stronger for an order of commitment than for an indictment. *In re Losasso,* (Colo.) 24 Pac., at 1082. There is at least "no greater sanctity surrounding the presentment of a grand jury

than a prosecution by information" (*State v. Crocker*, [Wyo.] 40 Pac., at 685) ; and, where the court has the evidence which the committing magistrate had, the "question of the bail is, therefore, open to consideration to the same extent as it would be if applied for before indictment". *In re Finlen*, (Nev.) 18 Pac., at 830, 831. And see *Hyler's* case, 2 Park. Crim. Rep. 570. The magistrate is chosen by the people to serve a term of years, and to officiate in all such cases. The grand jury are now selected by the sheriff under an open venire, to sit only during one term of court, and hold secret sessions. On information, as distinguished from the investigation by a grand jury, the accused is given a preliminary hearing before a magistrate, where he may be present, be confronted with the witnesses against him, introduce testimony on his own behalf if he desires, and have the merits of the charge presented to the magistrate, by counsel or argument. *State v. Crocker*, (Wyo.) 40 Pac., at 685, 686 ; and see *Lynch v. People*, 38 Ill. 494, 497. It is pointed out in *State v. Herndon*, (N. C.) 12 S. E. 268, 269 : "They hear the State's witnesses only, and only such of them as may be sent before them by the solicitor, or by order of the court". And "the officer employed by the state to prosecute exercises a large influence in the selection of witnesses to testify; gives the only legal advice, unless the court be called upon, and usually directs, to a considerable extent, the entire proceeding". *In re Losasso*, 24 Pac., at 1082; see also Sec. 301, Par. 8, Supplement to the Code, 1913; Code Sec. 5264; *State v. Herndon*, (N. C.) 12 S. E. 268, 269. Hence, says *Lumm v. State*, 3 Port. (Ind.), at 295, "indictments are often found upon . . . an incorrect understanding of the case".

Yet the magistrate's order of commitment has no weight as evidence. "The judges", says *Territory v. Benoit*, 1 Mart. (La.) *142, "have often looked into the testimony which the coroner is bound to record, and when they have been of opinion that the jurors had drawn an illogical conclusion, admitted the party to bail". And see *Cowell v. Patterson*, 49 Iowa, at

516, 517, and *Street v. State,* 43 Miss. 1, 28. And the court would either grant or refuse bail upon the evidence before the coroner or committing magistrate. (*State v. Dew,* 1 N. C. 142; *People v. Tinder,* 19 Calif. 539; *Dominus Rex v. Magrath,* 2 Strange 1242) and would not look beyond them. *Yarborough v. State,* 2 Tex. 519, 523; *People v. McLeod,* 1 Hill 377 (37 Am. Dec. 328); *In re West,* (N. D.) 88 N. W., at 89. No weight was attached to the act of the magistrate.

It is said in *Ex parte Kittrel,* 20 Ark., at 507, that "the evidence is to be heard" because so profound a knowledge of the law on the part of the judges is required, and such sound judicial discretion is to be exercised in order "to determine whether the evidence adduced rebuts the presumption of guilt raised by the indictment and proves the case to be bailable" as that the legislature could not have intended to entrust the determination of so important a matter to a county judge, and that, "if it were manifest that such was the intention of the legislature, we should be loath to uphold a law authorizing such an interference with the constitutional jurisdiction of the circuit court by an inferior tribunal". In *Robinson v. Dickerson,* (Ala.) 18 So. 729, a case which follows the common-law rule, it is expressly ruled that, on review by habeas corpus, the order of the magistrate prescribing bail is not legal evidence. *In re Haigler,* (Ariz.) 137 Pac., at 424, 425, holds that neither information nor indictment is evidence. *Ex parte Scoggin,* 6 Tex. App. 546, seems to be the only case in which as much as a remark is made to indicate that any evidentiary weight is to be given the order of commitment.

While this proves that the committing magistrate hearing is the better, it is not, and it not intended to be, an argument for the standing of that hearing, but an argument that, as the commitment which has the better right to be treated as evidence is not evidence, the indictment should not be. The point is that, considering this, and that since,—even when the English rule as to review of indictments was established, the courts that made the rule attached no evidentiary weight to

a commitment by a magistrate, because the evidence upon which the commitment rested was obtainable,—since the minutes of the committing magistrate are now no more accessible than the minutes of the evidence before the grand jury, and since the indictment may rest upon nothing but the minutes of the magistrate (Code Secs. 5272, 5278), no sound reason can be advanced for continuing to treat the indictment as evidence and also continuing to hold that the order of commitment is not evidence.

IV.   Thus far, the argument has proceeded on what may be termed negative lines—pointing out the weakness of present support for the English rule.   It remains to present some affirmative reasons why, in analogy with the treatment accorded an order of commitment by the English courts, no presumptions should be indulged for the indictment, now that so doing is no longer required of necessity, because the evidence upon which the indictment rests is available.

The secrecy gone, all is gone—not merely part.   Cases there are which, without mentioning any change by means of constitutions, state the premise that secrecy no longer obtains, and deduce therefrom only that there is now power to grant bail after indictment.   It is remarkable that this one correct deduction should universally have been made from a sound premise universally recognized, and that those who thus reason from that premise to that deduction failed to note that another deduction was just as inevitable.   The rule that the foundation for the indictment would not be investigated rested wholly on the undeniable proposition that, whenever there is an official act and the evidence taken by the body that acted is unobtainable, or, if obtainable, may not be examined, there is applied the rule that the best evidence alone will be considered.   To paraphrase it, when the courts may not know what testimony the grand jury had, the presumption that the indictment is justified is the only evidence on whether the grand jury did right.   It seems to have been overlooked that no presumption which rests on the impossibility of getting

evidence better than the presumption can live, after it is shown that better evidence does exist. Not that this presumption is overcome by the better evidence upon examining that evidence, but the fact that more direct evidence exists, puts an end to the existence of the presumption, without any examination of the direct evidence. A familiar illustration is the presumption resting upon love of life. It makes a jury case for freedom from contributory negligence. But if no more appear than that someone saw the fatal accident, the presumption for the instinct of self-preservation has no further function in the trial. It may be said that, roughly, *designatio unius est exclusio alterius* is an analogy.

2.

The character of the grand jury as a tribunal and the nature of the hearing before it has in part been described in another connection. It remains to add that a capital indictment should have no evidentiary weight against bail, because (1) the grand jury neither can nor does make a finding as to whether the offense charged is bailable, and (2) because the question of degree to be charged has no judicial treatment by a grand jury.

a. "The grand jury does not determine and are not clothed with the power to decide the question of bail in any case:" *State v. Crocker*, (Wyo.) 40 Pac. 681, 686. In the dissent in *Ex parte Smith*, (Tex.) 5 S. W., at 103, it is said that the grand jury is not required to find the proof "evident" to justify it in making a presentment for murder in the first degree. It is noticed in this dissent, and is true of the oath to Iowa grand jurors, that this oath does not exclude the finding a bill for murder which is a dragnet, making possible conviction for the highest offense, or one next higher, even though it is contemplated that there will, in all probability, be no conviction above manslaughter, which the indictment covers as much as it does the capital murder charged. From this, it follows that the grand jury does not have for

decision whether the proof of a charge is of such degree as to exclude bail; and the indictment has no weight on that question, because it does not pass on such question.

Assuming, for argument's sake, that if the presentment did make claim to decide the point, such assertion would be evidence, it is sufficient answer that the indictment cannot prove more than it claims; that all it does claim is that accused is guilty of a capital offense; and that, if we presume such charge is true, this does not meet the requirement of the Bill of Rights, defining when bail may be denied. It is not enough that the offense be capital; the prisoner is bailable unless the proof that he is guilty of such offense is evident, or the presumption of such guilt, great. The indictment does not assert that there is either such proof or such presumption to sustain the charge. Concede that, if it did so allege, a presumption would be raised to support the allegation, no presumption is indulged to sustain what is not alleged. Nothing proves more than it asserts. So that what is really demanded by the detainer is that more shall be presumed for the indictment than it alleges, and more than the body presenting the indictment has power to determine.

b. Additional to the method of procedure before commented upon, there is special reason why the indictment should have no weight on the question whether the offense is bailable. It is that the degree of the charge is usually a mere matter of trial policy determined on by the prosecutor, and not a judicial finding.

"We know," says *Lynch v. People*, 38 Ill., at 497, "that a party may, under indictment for murder, be convicted of manslaughter, and doubtless grand juries are ofteen controlled by that consideration in refusing, as is generally the case, to find indictments for the lesser offense."

Prosecuting attorneys are, consequently, declares the Supreme Court of Indiana, in *Lumm's* case, *supra*, tempted, as a matter of policy, to draw their indictments covering the highest offense, thus including the inferior, rather than for

either of the lower, which do not include the superior. It is said in *Street v. State,* 43 Miss., at 30, that the prosecuting officer very often prefers but one count for murder in such conditions, when the crime intended to be imputed is murder in the second degree, or manslaughter.

Says the Supreme Court of Colorado, in *Losasso's* case, 24 Pac., at 1082:

"The presumption . . . that the grand jury would not have returned a bill for the higher grade if the evidence pointed more clearly to one of the lesser offenses, does not rest upon a very substantial foundation. It is a fact that prosecuting officers, actuated by motives of policy, generally endeavor to procure indictments for the higher, rather than for either of the lesser grades of homicide. An indictment for murder is, not without reason, supposed to render a conviction of manslaughter more certain. On the other hand, under the charge of manslaughter, a conviction for murder would be impossible; yet the evidence adduced at the trial may greatly exceed in strength that upon which the indictment was found, and fully warrant such conviction. In theory, these considerations should have no weight either with the prosecutor or grand jury; but in practice, we know that they often turn the scales in favor of the graver accusation."

All of which is the equivalent of judicial pronouncement that the indictment may have been, and probably was, found, as a matter of policy, for the highest offense, and that no real consideration has been given to whether the evidence is sufficient to sustain the capital charge.

This is so little a strained argument—a mere catching at possibilities—that, as shown in another connection, one rule by which some courts test whether bail should be allowed takes into consideration judicial knowledge that juries quite rarely sustain the degree of murder charged; and the dissent in *Ex parte Smith, supra,* says: "We remember but very few instances in the judicial history of the state of a grand jury's presenting an indictment for murder of the second degree or

negligent homicide; and bills . . . charging manslaughter are rare exceptions. . . . The practice is to indict for the highest grade, and the general result is a conviction for a lesser grade". It is concluded that "it may be safely asserted that, of five indictments charging capital offenses, there is not more than one which the evidence supports"; and that so, logically, the presumption for the capital indictment should be "in the ratio of four to one . . . against the guilt of the party as charged and in favor of bail, upon the absolute facts".

As is most strikingly suggested in said dissent, the world has suffered from presumptions of the class invoked for indictments. It was once presumed the king could do no wrong, and hence those charged with crime in his name were not permitted to put in counter-evidence, nor to have counsel; when finally permitted witnesses, these were not allowed to be sworn, so that, at one time, the jury had to decide on the prisoner's guilt or innocence according to their judgment upon the evidence offered in support of the prosecution. This was justified upon two grounds: (1) that, as the sovereign was a party, the subject should not be permitted to impeach or question the testimony offered by this high litigant by introducing other witnesses; and (2) that, since the prisoner was on trial for felony, the witnesses would, in view of the fearful consequences, speak the truth, the whole truth and nothing but the truth. And it was one theory that it must be presumed the judges would honestly perform their duty which required that they examine witnesses for the prisoner, advise him for his benefit and assist him in defending himself, "taking advantage also of every obvious defect or irregularity in the conduct of the prosecution". 1 Chitty Criminal Law (Ed. of 1836), 623.

That these theories and presumptions proved in direct conflict with the fact—proved a mere theory—"is eternally affirmed by the blood of hecatombs of innocent victims sacrificed to this monstrous system". The practical result was that

England was, until "these tyrannical practices" were, in effect, abrogated by an edict of Queen Anne, a court-made shambles.

For all these reasons, "the rule that the proof of guilt thus offered and weighed should be *pro forma* treated as 'evident', and that the presumption thus arising should in the same manner be pronounced 'great', is largely a legal fiction. It finds little support in reason". *In re Losasso,* (Colo.) 24 Pac., at 1082. And, continues the court, therefore, "under our practice it would ordinarily accord more nearly with justice to hold the finding of the coroner's inquest or a committing magistrate conclusive as to the clearness of guilt than the report of a grand jury".

3.

Were we the first to hold that the presumption of innocence attends the accused at all times before conviction, we should feel this is a step to be commended, rather than to alarm. It is a position in line with the more merciful attitude of modern times, and another step away from the conditions that Queen Anne first modified.

The statement in some of the cases, that the indictment is evidence up to final trial, and becomes *functus officio* during and after such trial, is just a statement. No one has yet attempted to show what difference sustains this distinction. It cannot be escaped that, both on application for bail on a capital indictment and on final trial upon that indictment, guilt or innocence is involved. On the application, the question is, is the proof evident or the presumption great that the charge is true; on the trial, is the charge proven beyond all reasonable doubt?

It seems evident that neither the nature of the hearing nor the degree of proof required of the successful party has any logical relation to giving to an indictment the attribute of being evidence. Whether it is or is not evidence depends wholly upon whether a presumption of right action by the

grand jury should be indulged. The indictment in this regard has the standing given it by its paternity. If that presumption exists, it exists in all judicial hearings: not existing, it exists on no hearing. And then it is a question whether the degree of proof required to prove guilt on the trial is not greater than the degree required to show that the applicant is not entitled to bail. If that is so, we have the absurdity that the indictment is of no use as evidence, where the state needs it more, and does have evidentiary weight where a less degree of proof suffices. If the weight of proof required is the same on the two hearings, there is the absurdity of treating the same paper differently in two hearings in which the same degree of proof is required to establish the issues tendered in them. In *State v. Kauffman,* (S. D.) 108 N. W. 246, the burden on bail is put on the state, on account of the same general presumption of innocence which exists on final trial. See the dissent in *Ex parte Smith,* in which it is said that upon no principle of evidence "can this distinction be sustained", and that it is no more reasonable to treat the indictment as proof on the application to bail than it would be to rule on final trial that the indictment helps to make evidence showing guilt beyond reasonable doubt; for to assume as a general rule that a party indicted for a capital offense is evidently guilty of such offense "would be a most reckless assumption, unwarranted from the known conduct of grand juries, by reason or any rule of presumption".

The explanation in 1 Bishop's Criminal Procedure (2d Ed.), § 262, that there should be such assumption because "the grand jury is a part of the court, and, after it has found an indictment, the judge should assume the proof to have been evident; so that, in a capital case, *prima facie* the indicted defendant is not entitled to bail", does not explain, for the grand jury is always "a part of the court". And if that suffices, why may not the jury, on final trial, as well as the judge on hearing for bail, assume, from the finding of the indictment, that the party indicted is guilty. We think

the dissenter in *Ex parte Smith* was within bounds in say-
ing: "We defy the production of such an illogical, unrea-
sonable and unwarranted assumption of fact, save in cases
of this character, viz., bail".

4.

Nothing better proves how untenable is applying the
English rule than the positions to which courts that hold to
it have been driven; and the dissent, as it must, fathers all
this strained argument. For instance, the majority opinion
in *Ex parte Smith*, (Tex.) 5 S. W., at 100, 101, says that, if
such indictment does not, *prima facie*, establish a non-bailable
offense, the accused would be entitled to bail as matter of
right, the moment he was arrested, and the officer who refused
him bail would be guilty of false imprisonment. In *People
v. Tinder*, 19 Calif., 539, that if the indictment did not create
such presumption, the defendant held under it or on the
warrant issued upon it would, in the absence of other evi-
dence of his guilt, be entitled to discharge absolutely; and
there could not well be any justification for the exaction
of bail. In the *Hight* case, all this is followed. This is ex-
ceedingly labored. To put upon the State, after the writ of
habeas corpus has issued, merely the burden to show there is
no right to bail, necessitates no holding the detaining officer
liable as for a false arrest before the right to bail is asserted.
Until application demanding bail is made, the accused is not
under detention because of the evidence that exists against
him. In the language of *State v. Rosencrans*, 65 Iowa, at
385, it is not true "as the sheriff returned, that he held the
applicant by reason of the evidence. It was his duty to hold
him, regardless of the evidence, until he was discharged".
This is another way of saying, and it answers all, that the
bench warrant or indictment, or an order of commitment by
a magistrate, regular upon their face and issued by proper
authority, protects the one who obeys these writs, until a
competent order of court allows bail. See *Street's* case, 43

Miss. 28, 29. As is well said by Judge Hurt, dissenting in *Ex parte Smith*, 5 S. W., at 103, 110:

"The restraint is illegal in no case in which the prisoner is held under a legal capias, whether charged with capital crime or misdemeanor. The illegality consists in holding him when he applies for bail to the proper authority with sufficient sureties and is denied bail. . . . Presumptions of guilt before hearing for bail may or may not be drawn, for they are comparatively innocuous; but when the hearing begins, they must step aside and give way to the evidence."

To sustain itself in putting the burden on petitioner, *Ex parte Heffren*, 27 Ind. 87, was driven to holding that, to sustain the petition, applicant must produce the evidence upon which the state intends to rely for the conviction, and is privileged to cross-examine or impeach the witnesses of the state that he so produces. And so of *Rigdon's* case, (Fla.) 26 So., at 713.

And cases there are that conclude with leaving the burden of proof upon the accused and still hold (1) that to discharge the burden might be an impossibility and such burden might subject petitioner to cruel and unusual hardship, if not punishment (*State v. Hedges*, [Ind.] 98 N. E., at 418); (2) that the state must help limit the field of proof for accused—*Rigdon v. State*, (Fla.) 26 So. 711, 713. And see *Ex parte Randon*, 12 Tex. App. 145; *Ex parte Floyd*, 60 Miss. 913.

### 5.

Another reason against applying the English rule is the hardship that results, and that it disregards what may properly be termed natural burden of proof and the rule which puts the burden upon him who may readily prove a fact in issue when it would be exceedingly difficult, if not impossible, for his opponent to disprove it. One familiar illustration is that, on prosecution for selling without license, the defendant has to prove

10. EVIDENCE: burden of proof: natural burden of proof: facts peculiarly within knowledge of party.

he had the license, and not the State that no license was granted. The only dissent to the statement of the dissent—that no one "has better knowledge as to the facts of a case than the man who is charged with the offense. He is generally the only man in the world who knows all the facts and has the best knowledge as to who the witnesses are either for or against him, and he also absolutely knows whether their testimony is true or false"—is the statement that this is true if the one charged be guilty, and that it would seem to be unsound as to one an innocent.

Some of the cases that hold with the minority go counter to the theory that the accused has the better knowledge of the evidence against him, in that they require the state to narrow the field of his search for evidence and to define its limits for him. See *Ex parte Randon,* 12 Tex. App. 145; *Ex parte Floyd,* 60 Miss. 913; *State v. Hedges,* (Ind.) 98 N. E. 417; *Rigdon v. State,* (Fla.) 26 So. 711, 712. Let us see at what point the theory of the minority is stopped by logic, a decent regard for the rights of the accused, and the limitations upon the powers of mere human beings.

The State avers that the accused is guilty of a charged crime. In all arguments for the claim that the indictment makes prima-facie proof, the major premise is that the grand jury would not indict if there were not evidence justifying indictment. It follows the prosecution knows what and where the justifying evidence is. It certainly does seem more natural that the one who affirms guilt, and that there is evidence which makes the proof of guilt evident or the presumption thereof great, should, in the first instance, be held to point out what that evidence is, rather than that the accused, saying there is and should be no evidence, should go into the wide world in search of that which he says does not and should not exist, and this for the purpose of cross-examining and overthrowing it, after he has gathered it.

Look at other resulting hardships. If, though the minutes fail to show that bail should be denied, it must yet be denied

because fuller and additional evidence might establish that bail should be denied, then, though the course suggested in the dissent be followed and the witnesses who were examined before the grand jury made to testify, and though thereafter it still appears that the degree of proof thus furnished was insufficient, bail must yet be denied, because, forsooth, these witnesses may remember more, or testify more fully on final trial, or may get new information in the meantime; or additional witnesses may be found. Suppose, as here, it is known who all were present at the homicide, how can it be known there are not others to whom the prisoner made incriminating admissions? Must he be driven to take the stand as the only possible means of being allowed bail? Yes, says the dissent. If he does, how can his denial make certain that he is not guilty, and there is not somewhere evident proof that he is? Possibly an irresistible alibi might get him the right to give bail. But that defense might not be available, because, though utterly innocent, it happens that distance did not make the commission of the crime by him physically impossible. *State v. Lindsay*, 152 Iowa, at 404, 406; *State v. Bosworth*, 170 Iowa 329, 338. In a word, to sustain that the burden is on the accused, logic forces one to assert that, notwithstanding the constitutional provision that bail must be allowed unless it is proved the evidence of guilt is of a given strength, bail is only attainable where the accused shows to the satisfaction of the court sitting in habeas corpus not alone that he is, in fact innocent, but that he has never admitted to anyone that he is guilty, and—logical monstrosity though it be—shows further, though he is not the actor but the accused—and shows affirmatively—what is all the evidence that can be procured against him, and that such evidence, when adduced, even if it prove he committed murder, fails to do it with that degree of strength which constitutes evident proof or creates a great presumption. The judicial mind so revolts against thinking the law could have intended this as that it should

not be held to be the law, in the absence of unmistakable provision.

If that be still applicant's burden, he was as well off when the common-law rule was most rigidly enforced. Up to indictment, he could, just as he still may, have his detention reviewed upon the testimony before the magistrate. And while, to be sure, the indictment was ordinarily conclusive, that was in reality no worse than permitting him to overcome the indictment upon condition that he furnish impossible proof. We give no effect to the evident fact that changes to which we have many times called attention were intended to aid the applicant, if we persist in demands which frustrate such intention. And see *Ex parte Hammock*, 78 Ala. 414, 416, and *Ex parte Newman*, (Tex.) 41 S. W. 628, 629, and *State v. Hedges*, (Ind.) 98 N. E., at 418.

V. There is no occasion for any strained reasoning and, as it seems to us, no ground for misunderstanding the natural and proper course of procedure. The only difference between putting the burden on the State, instead of the defendant, is that, if the burden is on the first, and all the evidence for the State which is in sight is insufficient to warrant the denial of bail, bail should be allowed; while, if the burden is on the detained, then, though he does produce all the State has disclosed, and although that is utterly insufficient to detain him without bail, yet he must thus be detained, unless he adds sufficient affirmative proof of innocence. Why is not the orderly and fair method to compel the State to begin, and to let it use the minutes presented with the indictment, if it wishes to do this? If it does not wish to use the minutes, or, using them, is not satisfied with what is thus shown, it may put on the witnesses who testified before the grand jury, and any others. When the state rests, it is for the accused to say whether he wishes to make counter-proof, or to rely upon in effect demurring to what the State has adduced. If he make

11. BAIL: application for bail: procedure.

counter-proof, the respondent may rebut. Substantially this is the procedure approved in *Ex parte Bramer*, 37 Tex. 2, and, the dissent notwithstanding, nothing here said on procedure justified an impression "that no other testimony can be considered save that appearing in the minutes of the testimony"; and though we do say (and truly) "it is this, and this only, on which the indictment was found." And this does not justify understanding "the majority to affirm that in no event can anything be considered in such a proceeding as this save the testimony upon which the grand jury acted". Nor is the course of procedure here outlined disapproved in *Losasso's* case, 24 Pac. 1080, nor in any note in 39 L. R. A. (N. S.) 772, 775, nor yet in any note to 10 L. R. A. 847.

## 2.

Why should not the minutes of the evidence before the grand jury be competent for either party? Why should not a presumption be indulged that they are neither "fragmentary" nor yet "fragmentary statements taken down by one unskilled in such matters"? Neither *State v. Ostrander*, 18 Iowa 435, nor *State v. Hayden*, 45 Iowa 11, thus stigmatize them. All case law references to them since the existence of present statutes give those minutes standing. See *Steele Smith Co. v. Potthast*, 109 Iowa, at 417. The minutes should not be treated as fragmentary and unreliable, unless we are to assume the state is acting in bad faith. It is said, in *State v. Hasty*, 121 Iowa, at 511, that it is required there be indorsed on the back of the indictment "the names of all witnesses upon whose testimony the finding of the grand jury is based", and that there is a statute provision under which no witnesses can be used against the one indicted unless he be notified of the additions. Why is not this, *prima facie*, a limitation upon the field of inquiry?— and it has been held, in effect, that the names indorsed on the

*12. Bail: capital offense: proof and presumption: evidence: minutes of testimony: competency.*

indictment are presumed to limit for applicant the witnesses that exist against him. *Rigdon v. State,* (Fla.) 26 So. 711, 713.

If it may not be taken that it is the purpose of the statutes to have these minutes of some substantial value, that they are to state the essence of what the grand jury had, and that unless, on application for bail the State produces something else, it may be taken by the petitioner the State has nothing more, why may an indictment rest wholly upon minutes of the evidence before another grand jury?

There is a line of cases that the test is not guilt or innocence but, was the grand jury warranted in indicting as it did? *Ex parte Curtis,* (Calif.) 28 Pac. 223; *Brown v. State,* (Ind.) 46 N. E., at 35; *State v. Hedges,* (Ind.) 98 N. E. 417; *State v. Herndon,* (N. C.) 12 S. E. 268, 270. If that is sound, certainly the presenting all the grand jury had must be a competent method of establishing either that bail should be allowed or denied. It is quite difficult to apprehend how the minutes can base the indictment—the indictment relied on to justify the denial of bail—but the minutes be never sufficient to obtain bail. In few words, the assertion means that the minutes are strong enough to produce the need of applying for bail, but too weak to obtain bail—enough to found the indictment, but not to base an attack upon that indictment; or, as it is more strikingly still put by the minority, the minutes in this case can and do prove guilt with the great degree of proof required, but are incompetent to prove the converse.

On the minutes alone was bail granted in *State v. Kauffman,* (S. D.) 108 N. W. 246, 247, and in *Ex parte Bryant,* 34 Ala., at 278. In *People v. Shattuck,* 6 Abb. N. Cas. (N. Y.), at 37, the court held it could not look beyond the minutes of the grand jury, and thereon denied bail. And see Code Sec. 4450; *Ex parte Good,* 19 Ark. 410; *People v. Porter,* 8 Barb. 168, note; *King v. Marks,* 3 East 157 (2 East [New Ed.] 88); *Street v. State,* 43 Miss. 1, 26. Every claim of a

presumption is also a claim that the acts of the grand jury were in substantial compliance with law. If the official function through which the minutes are created, plus the fact that they are prepared by one who, per statute, is presumed to be competent and are read to and signed by the witnesses, creates no standing,—but see *Steele Smith v. Potthast*, 109 Iowa 413, 417,—why should the other official act, the concurring in and presenting an indictment, have standing?

b. They are not now "fragmentary statements taken down by one unskilled in such matters". They are a solemn court record, a copy of which is to be furnished defendant— presumably on the theory that this will be of some substantial aid to him. They are prepared by one who is, per statute, required to be, and, therefore, presumed to be, "a competent person". He is sworn to perform his duty "faithfully and impartially" and, therefore, presumed to have so performed it. After they have been so prepared, they must be read over to and signed by the witness whose testimony they are a preservation of. Code Sup., 1913, Sec. 5258, Code, Sec. 5276. In *Steele Smith v. Potthast*, 109 Iowa, at 417, we hold that they are admissible in a civil case "as in the nature of an admission against the party giving the testimony", because they had "been read over to the witness and signed"—which surely should not be if they are incomplete fragments, unskillfully reduced to form. See *People v. Van Horne*, 8 Barb. 158.

In this case, the State did not object to them and "off and on" relies upon and repudiates them.

If one course outlined by the minority had been followed and petitioner *had* "called the grand jurors", would that have insured a more reliable statement of all that was testified to before the grand jury than do these minutes? Is it certain that these jurors were more competent as to this than was their clerk? Would their testimony, their recollection, as to all the evidence taken on one case out of many, give a better showing than the minutes taken at the time by the clerk in

just one case, and those read over to and signed by each witness?

c.   One can conceive the accused's objecting to the use of the minutes as evidence. He had no part in their making, no right to cross-examine or impeach, or to counter-prove. But why should the State wish, or be allowed, to object? One who claims a presumption for the presentment of a grand jury should not be heard to urge also that the basis of the presentment is valueless. The basic argument for the presumption is that the act of the grand jury is an official act, and rests upon proper and sufficient evidence. It does not lie in the mouth of the State, whose agents made the record of that evidence, to assert a presumption for that record and at the same time to discredit the work of these agents in making such record. And is it possible for the State to object and be consistent? The present case is illustrative. In one breath, appellee tells us that, "when filed, the minutes   .   .   . become part of the record in the case"; that petitioner must "overcome the evidence of the State's witnesses, as set forth in the minutes of the testimony attached to the indictment"; that, since nothing has been put in against "all the testimony introduced which supports and upholds and sustains the indictment (the minutes), there can be no sound theory upon which it can be contended that, in this case, proof is not evident and the presumption great"; and in another breath, that, "in this respect it must be considered that the evidence attached to the indictment consists simply of the minutes of what is said by the witnesses. It is not claimed or pretended that these minutes contain all that is said by the witnesses"— but why not the *essence* of what they said?

VI.   The objection is made that, if the minutes may justify bail by being too weak to prove what is necessary to justify the denial of bail, "the court would be trenching upon delicate and dangerous ground, should it attempt to pass upon the crucial question to be determined hereafter by the jury empaneled to try and decide upon the entire matter of guilt

or innocence of the accused, including the matter of the nature of the grade of homicide''; that, where the minutes are the only evidence, and are weak, ''the appellant cannot, in justice to criminal practice, contend that he is entitled to two trials; the one on a hearing for habeas corpus, and the other upon a hearing at his trial''. This is palpable *non sequitur*. Any method other than using the minutes would result naturally in greater discussion on decision, of a character bearing prejudicially upon final trial. It is regrettable, but inevitable, that the habeas corpus hearing, in a way, makes an additional trial. As the hearing is a proceeding which is civil, and not criminal,—*State v. Collins*, 54 Iowa 441; *In re Jewett*, (Kans.) 77 Pac. 567; *State ex rel. Durner v. Huegin*, (Wis.) 85 N. W. 1046, and as the final trial is purely criminal, there must be, in a sense, two trials, unless we are to judicially repeal the Constitution and do away with one or the other of these two distinct proceedings. And just how is more of a double trial produced on the theory of appellant than on that of appellee? It would seem, rather, that passing on bail upon nothing but the minutes would conduce to make the hearing on application less of a double trial than if either or both parties opened wide the door of inquiry.

It is recognized in six cases we have examined that ''to open the whole question of guilt or innocence would be attended with the most serious inconvenience''. But, as said in one of them,—*Losasso's* case, *supra*,—while it is a serious objection, which would be very persuasive if the courts were entirely free, that the regular trial is, to a limited extent at least, anticipated, and though the guilt or innocence of the accused is not to be determined, the quantity and character of the proofs on this point are, for the special purpose in hand, necessarily considered—these objections cannot avail against a positive constitutional command; and if the Constitution requires the court to determine for itself whether or not the proof is evident or presumption great, in a given case,

all considerations of expediency or convenience, however
potent they might be at the common law, must give way.

About all courts may do is to indulge in no more deciding
than is imperative. Without regard to whether bail is granted
or denied, many of them have thought the best procedure was
to refrain from setting out or commenting upon the evidence,
and to state the. conclusion only—and we have decided to
follow that course here, and to proceed to decision on the
theory that in this case, the defendant has the burden of
proof.

## Division III.

Reaching the evidence, petitioner urges that a notice of
additional testimony served by the county attorney should
not have been received. Appellee responds
that, because no motion was made to strike
the notice, "it is difficult for us to under-
stand why . . . being part of the
record . . . it should not be considered
with the rest of the files and records in the
case".

13. **Bail:** capital offense: proof and presumption: evidence: notice of additional testimony: competency.

We find it difficult indeed to understand defendant's
difficulty. He seems to advance the claim that we may not
review the admission of testimony, no matter how well ob-
jected to below and complained of here,
unless a motion to strike was made below.
We cannot agree. A motion to strike is not
the only effective objection. Often it is not
an effective one. The notice was fully and
aptly objected to, and error upon its admission is properly
assigned. Its admission is here for review.

14. **Appeal and error:** review: scope: evidence: failure to move to strike.

Appellee urges that this notice "has the same function
as the minutes of the testimony of witnesses attached to the
indictment", and that "the statute authorizes such notice",
and that, therefore, "the citation of authorities seems to be

unnecessary". The minority sustains this claim, and adds that such notice "is the equivalent of an oath".

We have to say: (1) The notice was of testimony to be given by one who was examined by the grand jury, and the statute authorizes no notice except of testimony by persons who were not thus examined. Sec. 5373, Code Sup., 1913. (2) As the defendant insists that the minutes of the testimony before the grand jury are of no value as evidence, his claim that the notice "has the same function" that said minutes have, is no argument for holding the notice to be evidence. (3) Whatever the status of the minutes, the notice is not their equivalent. The one is a signed statement acknowledging what the signer has said under oath; the other is the unverified opinion of one as to what another *will* testify. An indictment may be found on the one. It will not be claimed an indictment could rest on such a notice. (4) It is not the equivalent of an oath. An indictment for perjury on its statements is inconceivable. (5) In *Steele Smith v. Potthast*, 109 Iowa 413, 417, the minutes were held admissible evidence against the one who signed them. In *State. v. Ostrander*, 18 Iowa, at 455, it was refused to let in such notice, and its exclusion was upheld with the statement that "the right to read in evidence the notice is destitute even of plausibility". (6) Bail has been allowed on the minutes— could it be on producing such notice? Bail has been denied on the minutes. If it may be denied because of such notice, the county attorney has unbridled power to deny bail. He need but be free in hoping what those not yet summoned will testify. In *Ex parte Bramer*, 37 Tex. 2, it was held error "to refuse bail upon the statement of the district attorney that he has other evidence which he will not disclose, for fear of weakening the State's case". Yet this statement was as much "an official act" as is this opinion in a notice not authorized by statute as to what a witness will say when put on the stand. This is not met by presumption of duty done.

15. GRAND JURY: notice of additional testimony by witness before grand jury: effect.

As will be seen, the county attorney has no duty in the premises; and being mistaken in opinion is not a breach of duty.

There can be no presumption for acts by a county attorney, unless such as the law makes it his duty to perform. Even if this notice were required or permitted, no presumption could be indulged, beyond that the officer has done his duty in serving the notice. There is no presumption that the opinion expressed by him will be sustained on the trial. As well say it would be evidence against bail if he declared "as county attorney" that witnesses would on the trial fully prove the guilt of accused; that he was guilty; and that it would cripple the State to admit to bail. In no view is it an official act to declare what a witness will swear to. It is no attribute of any office to know what others will testify, or to guarantee that they will testify in a specified way.

How can such "evidence" be relevantly or successfully disputed? The notice does not prove, or even say, that what is stated in the notice is in fact true. It but says what the county attorney expects the witness will say. It would not join issue to show that the evidence expected is untrue. There is no claim that it is true. All that could be answered is that the county attorney does *not* expect such testimony, and that petitioner believes that, though it be expected, it will never be given—all a collateral dispute that does nothing for settling the one in fact to be determined. This notice is not evidence here, and we next examine the evidence as it stands without the notice.

II. Twelve decisions examined affirm that consideration should be given the fact that, in the application, the trial court saw and heard the witnesses. Both that court and we lack that help. Here, both act on written evidence alone. We cannot agree with appellee that, in such circumstances, or, for that matter, in any, we should give it weight that "the trial court is familiar with local condi-

16. BAIL: capital offense: application for bail: evidence: "public opinion."

tions : . . and understands the nature of the disposition of the defendant, and knows about the witnesses who have testified''. To do so would approve that the trial judge shall ascertain what ''local conditions'' demand, and shall let what is ascertained enter into judicial decision. It would approve the judge in making and acting upon private inquiry concerning the disposition of petitioner. Witnesses on the application may or may not be known to the judge. To follow appellee, we should give weight to the private information he obtains or has concerning these witnesses, who testified in writing alone. We must act upon the record before the trial judge, and upon nothing else. Every state has statutes providing for a change of forum if the ''local conditions'' are too well agreed on how a suit should be decided. If a strong local sentiment against a suitor is a reason why a tribunal should not be allowed to decide at all, consulting such sentiment is no argument for sustaining a decision into which such sentiment is permitted—nay, invited—to enter. We are not prepared to let the ''town meeting'' decide or influence decisions here. The courts are still the refuge of those who are in hopeless minority and justly or unjustly unpopular, but who invoke the justice of the law.

## 2.

Decisions on bail are almost altogether fact decisions and, in many, seeing the witnesses is given weight. Many we have examined do not set out the facts. Set out or no, it is of necessity that the facts considered differ. Where we are able to do so, even an attempt to analyze their facts would alone make a volume, and yet the analysis profit no one. The cases exhibit on what bail has been granted or denied, and yet, for the reasons stated, fix no absolute standard for decision.

Of forty cases examined, in two, bail was allowed on evidence that made a stronger case against petitioner than is present here. In one, the case against petitioner was not

so strong, perhaps, as here, and bail was allowed. In two, the case against the petitioner was stronger and the case for him weaker than here, and bail was allowed. In one, guilt was at least as well shown as here, though it was done circumstantially. It, however, was weak as a total. Bail was allowed. In sixteen, the case against the relator was as strong as or stronger than the one at bar, and bail was allowed. In twelve, the case was much stronger against the petitioner, and bail was refused; and so of the case of *Finlen,* (Nev.) 18 Pac. 827, 828, wherein the case for the petitioner was much weaker. In two, the case against petitioner was stronger and the case made for him weaker, and bail was denied; and in one, the case against relator was much stronger, and bail was allowed.

In *Ex parte Suddath,* (Tex.) 8 S. W. 479, denial of bail was reversed because the evidence tended to show that deceased drew first; in *Ex parte King,* (Ala.) 5 So. 863, because it tended to show deceased was the aggressor; in *Ex parte Hope,* (Tex.) 15 S. W. 602, because the belief was raised that the killing was in self-defense.

### 3.

That petitioner is charged as an accessory affects nothing, here. It is still necessary to determine, upon the competent and relevant testimony, whether the evidence of his guilt justifies the denial of bail. To be sure, one who is an accessory in a premeditated murder must be indicted, tried and punished as a principal. Code Sec. 5299. But that adds nothing to the proof that the accessory is guilty of premeditated murder. The statute does not make such acces-· sory guilty thereof because the one whom he aided is. The one who aids another who commits a homicide with malice aforethought and specific intent to kill might help without having such malice or intent. *State v. Smith,* 100 Iowa, at 3,

17. BAIL: capital offense: application for bail: evidence.

4. And see *Ex parte Bryant,* 34 Ala., at 277; *Ex parte Smith,* (Tex.) 5 S. W., at 101; *Street's case,* 43 Miss., at 18; *Ex parte Jack,* (Miss.) 22 So. 188; *Territory v. Benoit,* 1 Mart. (La.) 77.

III. That the cases afford us no standard for decision does not relieve us from adopting one and, since we are acting as an appellate court, from furnishing a guide for this jurisdiction by announcing the standard we adopt.

18. BAIL: capital offense: application for bail: improper test to determine.

We agree with appellee that we should not proceed as a substitute jury. We agree with his statement that it should not be contended that "a court should guess what the jury may do, and the experience of the lawyers and courts is that juries frequently do the opposite from what they are expected to do". And it has been declared that if, "in the opinion of the judge, the proof is not evident, what right has he to indulge in suppositions at all? If his judgment favors the granting of bail, his obligation to duty should enforce it, without indulging in speculations as to what a jury might do in the premises". The deduction of appellee is that, as the court should not decide by speculating on how a jury would, therefore, the only test that is proper, and which he declares is "the universal rule announced by a majority of the courts of the country, as stated in the leading encyclopedia", and the only one which "furnishes the court a definite and fixed rule by which to be governed", is a rule which was first announced in *Commonwealth v. Keeper,* 1 Ashmead, 183, and 2 Ashmead, 227, by the Court of Common Pleas of Pennsylvania, somewhere about the year 1808, and is this:

"It is difficult to lay down any precise rule for judicial government in such a case, but it would seem a safe one to refuse bail in a case of malicious homicide, where the judge would sustain a capital conviction pronounced by a jury on evidence of guilt such as that exhibited on the application to bail, and to allow bail where the prosecutor's evidence was of

less efficacy. This appears to afford a practical test by which the question of admitting to or refusing bail in malicious homicide may be readily solved."

This has been followed, usually without more than naked approval, in Alabama, California, Colorado, Florida, some subordinate courts of New York, an old case in Ohio, in Texas and Wyoming. Though thus followed, it is, nevertheless, far from being the fact that it is a rule universally followed. It has been repudiated directly. It has been repudiated by necessary implication when apparently endorsed. And we think it will presently be made to appear that those who dissent exhibit the better reason; and in view of this our position, it is passing strange that the dissent should criticize the opinion for *approving* this rule.

## 2.

This rule is directly repudiated in *Ex parte Bridewell*, 57 Miss., at 42, 43. This case, overruling *Street's* case, 43 Miss. 1, 29, for approving of this rule, holds that to apply it "is plainly violative of the organic law". It is pointed out that this rule errs in "failing to give due effect to a verdict of conviction"; and to the effect such effect has on the difficulty of setting a conviction aside—and the *Bridewell* case concludes:

"Where no error of law has been committed to the prejudice of the accused, the verdict will not be set aside unless the court can say that it is without evidence to support it, or that, upon a review and inspection of all the evidence, the finding is plainly erroneous. To apply such a test to a proceeding for bail, and to declare that it will be denied unless the relator has demonstrated that the evidence against him is of a like unsatisfactory character, is to reverse the constitutional requirement that it shall be granted unless the proof of guilt be evident or the presumption great."

In all this, the *Bridewell* case is approved in *Ex parte*

*Smith,* (Tex.) 5 S. W. 99, and followed in *In re Thomas,* (Okla.) 39 L. R. A. (N. S.) 777, to the extent of a statement that the Pennsylvania rule is unmindful of the inherent right to life, liberty, and the pursuit of happiness of the citizen, and casts a burden upon those charged with capital offenses not contemplated by the law.

### 3.

The Pennsylvania rule is that, unless the evidence upon an application for bail is such as that a conviction resting on like evidence would be set aside by an appellate court for non-support, bail must be denied. It follows that every decision which allows bail on a record upon which an appellate court would *not* set aside a conviction repudiates such rule, even if in words it approves the rule. Keeping this in mind, it will appear that, so far from being universally followed, the Pennsylvania rule is almost universally repudiated. The books are filled with cases in which bail is granted for reasons upon which no appellate court would disturb a conviction, and upon considerations that could not enter into a review of a conviction.

a. The appellate court will, in a criminal case, more readily interfere with a verdict contrary to the weight of the evidence that it will in a civil case. *State v. Tomlinson,* 11 Iowa 401. The sum of this appellate rule is that, proceeding carefully and cautiously, a conviction will be set aside if clearly contrary to the weight of the evidence. *State v. Pilkington,* 92 Iowa 92; *State v. Reinheimer,* 109 Iowa 624; *State v. Woolsey,* 30 Iowa 251.

So far from being universally held that bail must be denied unless the clear weight of the evidence proves innocence,—the Pennsylvania rule,—it is the universal holding that bail must be granted unless the clear weight of the evidence makes evident proof of guilt.

b. So far from being held that the application fails

unless innocence is made manifest, it has been often ruled
that, if the ''proof stands indifferent whether the accused is
guilty or innocent, the rule generally is to admit him to bail.''
*King v. Fortier,* Rap. Jud. Quebec, 13 B. R. 251 (1 Ann.
Cas. 10); *Ex parte McAnally,* 53 Ala., page 495; 2 Hawkins'
Pleas of the Crown, Chap. 15, paragraphs 20 and 80; *People
. v. Goodwin,* 1 Wheel. Crim. (N. Y.) 443; *People v. Perry,* 8
Abb. Pr., N. S. (N. Y.) 27; *People v. Shattuck,* 6 Abb. N. Cas.
(N. Y.) at 37.

c.   Bail will be granted if there be substantial conflict
as to any element essential to a capital offense.   It has been
very numerously held that, when there is such conflict, the
proof cannot be said to be so evident as to preclude admission
to bail.   5 Cyc., page 67; *Ex parte Wray,* 30 Miss., at 681;
*Ex parte Bryant,* 34 Ala., at 277; *Ready v. Commonwealth,*
9 Dana, * 38, 40; *Ullery v. Commonwealth,* 8 B. Mon. 3, 4;
*Wingate v. The Republic,* found digested in Alexander's
Texas Digest, page 230; *Ex parte Banks,* 28 Ala. 89; *Ex parte
Croom,* 19 Ala. 561, 570; *Ex parte Simonton,* 9 Port. (Ala.)
390, 392 (33 Am. Dec. 320); *Ex parte McCrary,* 22 Ala. 65.
And so if there be a well founded doubt as to whether it be
murder in the first degree.   *Franks v. State,* (Ala.) 65 So. 857.
And *Rex v. Marks,* 3 East 165 (2 East [New Ed.] 91), holds
that the court will bail ''wherever there is any doubt either
on the law or the fact of the case''.

It has been further held that, while a mere conflict of
testimony, even upon a vital issue, does not, of itself, entitle a
defendant held for murder to be admitted to bail,—*In re
Troia,* (Calif.) 28 Pac. 231; *In re Finlen,* (Nev.) 18 Pac., at
832, 833; *Ex parte Smith,* (Tex.) 5 S. W., at 102; *In re
Thomas,* (Okla.) 93 Pac. 980; *Schmidt v. Simmons,* (Ind.) 36
N. E. 516; *Ex parte Weaver,* 55 Ala. 250; *Price v. State,*
(Tex.) 26 S. W. 624; *Rex v. Greenwood,* 2 Strange 1138; *Ex
parte Jones,* (Tex.) 20 S. W. 983; *Ex parte Foster,* 5 Tex.
App., at 646, 647,—still, if, on the evidence considered as a
whole, including the conflict, a reasonable doubt of the de-

fendant's guilt of murder is generated when the evidence is so considered, bail should be granted—*Ex parte Bollin,* (Okla.) 109 Pac. 288; that the prisoner should have the benefit of such reasonable doubt as arises in the mind of the court when it attempts to reconcile the testimony, and if then, on the whole case, a reasonable doubt is entertained, the accused should be admitted to bail—*Ex parte Jones,* 20 Ark. 9; but that, if so considering the evidence does not create a reasonable doubt on whether accused is guilty of a capital offense, bail should be denied. *Ex parte Dykes,* (Okla.) 117 Pac. 724; *Ex parte Smith,* (Okla.) 99 Pac. 893; *In re Thomas,* (Okla.) 93 Pac. 980.

*Ex parte Evers,* (Tex.) 16 S. W. 343, says that, keeping in mind the presumption that the action of the trial judge is right, "'if, upon the whole testimony adduced, the court entertains a reasonable doubt whether the relator committed the act, or whether, in so doing, he was guilty of a capital offense, bail should be granted'." A dissent in *Ex parte Smith,* (Tex.) 5 S. W., at 111, 113, which dissent later became the view of the court, declares it is for the court or judge that hears the testimony to consider the evidence as a whole; and if, by the entire evidence, a reasonable doubt of guilt of a capital offense is generated, bail should be granted. According to *Ex parte Bridewell,* 57 Miss. 39, bail should be allowed where there is a reasonable doubt of whether accused committed the crime. And see *Ex parte Pettis,* (Tex.) 131 S. W. 1081, and *Ex parte Curtis,* (Calif.) 28 Pac. 223.

In few words, these hold that, if there be a substantial conflict on some element vital to a non-bailable offense, this raises a reasonable doubt, and that bail is due if a reasonable doubt exists.

But we hold that conflict will not justify setting aside a conviction. *State v. Falconer,* 70 Iowa 416. And we will not reverse a conviction because we entertain a reasonable doubt of guilt, and hold that, on whether the evidence estab-

lishes guilt beyond reasonable doubt, the verdict is conclusive. *State v. Pray,* 126 Iowa, at 253.

d.  It has been held bail should be allowed where only a "probability of guilt is shown"—*Gainey v. State,* (Fla.) 29 So. 405; *Ex parte Nathan,* (Fla.) 50 So. 38, 40—and "when the evidence does not produce entire conviction, though it makes in the mind a belief of the party's guilt"—*State v. Wiley,* 64 N. C. 821.

Would we set aside a conviction because, in our opinion, no more than a probability of guilt was shown, or though, while the evidence caused to believe appellant was guilty, it did not produce our "entire conviction"?

e.  So far from holding that bail will be denied unless the clear weight of the evidence shows petitioner is not guilty of a capital crime, cases hold that bail should be allowed unless the proof of such guilt is plain, clear and obvious—so says *Ex parte Russell,* (Tex.) 160 S. W., at 76; unless the proof is "clear to the mind, obvious, plain, apparent, manifest, notorious, palpable" (*Ex parte Foster,* 5 Tex. App., at 647); is "clear to the vision,—especially, clear to the understanding, and satisfactory to the judgment", is "manifest, plain, clear, obvious, visible, apparent, conclusive, indubitable, palpable, notorious". *State v. Kauffman,* (S. D.) 108 N. W. 246.

Conceive of reversing a conviction because the appellate court thought the evidence fell short of meeting such standards as these!

f.  Bail has been granted in very many cases because the judges weighing the evidence practically as a jury have failed to become satisfied that the proof of guilt was sufficiently clear and strong to justify the denial of bail. *People v. Hyler,* 2 Park. Crim. Rep. (N. Y.) 570; *In re Haigler,* (Ariz.) 137 Pac. 423, 424; *United States v. Marshall,* 26 Fed. Cas. 15,726 a; *Ex parte Bryant,* 34 Ala., at 277; *Ex parte Miller,* 41 Tex., at 214; *Ex parte Baronnet,* 16 Eng. Law & Equity, 365; *In re Losasso,* (Colo.) 24 Pac. 1080, 1081; *Ex*

parte *Wray*, 30 Miss., at 679; *Ex parte Dykes*, 83 Ala. 114;
*In re Wilson*, (Tex. App.) 13 S. W. 609; *State v. Crocker*,
(Wyo.) 40 Pac. 681, 686; *People v. Tinder*, 19 Calif. 539.

The consideration includes the existence of mitigating cir-
cumstances (*State v. Klingman*, 14 Iowa, at 407, 408), and
matter of justification. 5 Cyc., 65, 66; *Ex parte Hope*, (Tex.)
15 S. W. 602; *Ex parte Suddath*, (Tex.) 8 S. W. 479; *Ex
parte King*, (Ala.) 5 So. 863; *State v. Wicks*, R. M. Charlt.
(Ga.) 139.

We would not reverse because we found evidence tending
to show some mitigating or justifying circumstances.

g. We should reverse a conviction with a death sentence
if there was merely enough evidence to have justified indict-
ment; or it amounts to no more than proof that there is
probable cause for charging accused with murder. Yet bail
has been denied in such state °of the evidence. *In re Collins*,
11 Abb. Prac. (N. Y.) 406; *In re Thomas*, (Okla.) 39 L. R.
A. (N. S.), at 775, 776.

h. Still another condition of evidence which will justify
bail can never arise in appellate review of whether a con-
viction is supported by the clear weight of the evidence. It is
this: In some few cases, bail was granted because it is found
that a jury will, on the evidence before the court, not be likely
to assess the death penalty, even if it might be sustained in
so doing; and where the evidence is held to be not so strong as
that the acccused is likely to flee in fear of death. *Ex parte
Stephenson*, (Tex.) 160 S. W. 77.

Self-evidently, this is no inquiry into whether the jury
will be sustained if it do impose the death penalty, but
whether the evidence is not such as that it is improbable it
will impose the penalty, even if sustainable in doing it, or is
not so strong as to make the accused feel that his execution is
inevitable.

i. According to these few cases, the evidence is to be
considered with reference to the purpose of bail; an inquiry
is to be made whether it so strongly indicates the death penalty

may be inflicted as that, because "all a man hath will he give for his life", bail will not produce the prisoner for trial. So considered, say these, bail should be granted "when a serious doubt exists as to the guilt of the accused, giving him the benefit of every reasonable doubt". If his guilt is beyond dispute, the general rule is not to grant bail "unless the opportunity to escape does not appear to be possible, and the probability of his appearing for trial is consequently considerable, if not sure". *King v. Fortier*, Rap. Jud. Quebec, 13 B. R. 251 (1 Ann. Cas., 10); *State v. Crocker*, (Wyo.) 40 Pac. 681, 687; 1 Bishop Crim. Procedure, (2d Ed.) Sec. 255; *State v. Kauffman*, (S. D.) 108 N. W. 246, *People v. Dixon*, 3 Abb. Pr. (N. Y.) 395 (4 Park. Crim. [N. Y.], 651); *State v. Herndon*, (N. C.) 12 S. E. 268, 270. Surely that is not the Pennsylvania test. No such consideration could enter into a review of a conviction.

j. The Pennsylvania test does not commend itself to us, because to justify the denial of bail merely because an appellate court would not set aside a capital conviction on the evidence before it on the appeal from an order denying bail is not a liberal treatment of the evidence; and constitutional and statute provisions as to bail require "fair and liberal construction" in passing on the evidence. 5 Cyc., 64, 65, citing *People v. Baker*, 10 How. Pr. (N. Y.) 567, and *Beall v. State*, 39 Miss. 715.

k. By declaring for a test of its own, *McAnally's* case, 53 Ala., at page 498, militates against the Pennsylvania test. The rule of the *McAnally* case is: "If the proof is evident or the presumption great, if the evidence is clear and strong, leading a well guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right". This is followed expressly in *In re Losasso*, (Col.) 24 Pac. 1080, 1082, and in *In re Thomas*, (Okla.) 93 Pac. 980. Perhaps in some instances, without mention of the

parent case, this rule is, in terms, adopted in Texas, and in the cases of *Ex parte Foster,* 5 Tex. Court of Appeals 625; *Ex parte Beacom,* 12 Tex. Court of Appeals, at 322; *Ex parte Evers,* (Tex.) 16 S. W. 343; *Ex parte Coldiron,* 15 Tex. App. 464, 472; *Ex parte Stephenson,* (Tex.) 160 S. W. 77; and see *Ex parte Smith,* (Tex.) 5 S. W., at 101, and *Ex parte Miller,* 41 Tex., at 214.

IV.   About all that this makes clear is that the decisions in other jurisdictions afford us no standard for performing our instant duty, and that the one urged by the defendant is

19. BAIL: capital offense: "proof evidence or presumption great": general test.

an improper one.   But even this much does make plain that it is our duty to do the deciding.   While we do not go with the Indiana court that tries such an appeal as this *de novo,* it is well settled, even if some of the cases by generalizing seem to approve of a contrary holding, that we cannot substitute for judicial consideration an investigation of whether, on the evidence before us, a jury should convict, nor whether, if it would convict, an appellate court would sustain the conviction.   *In re Finlen,* (Nev.) 18 Pac. 827, 829; *Ex parte Kittrel,* 20 Ark., at 507; *State v. Crocker,* (Wyo.) 40 Pac., at 687, 696; *Ex parte Richards,* (Ind.) 1 N. E., at 640; *Ex parte Nathan,* (Fla.) 50 So. 38, 40; *Cowell v. Patterson,* 49 Iowa, at 516, 517; *In re Losasso,* (Col.) 24 Pac., at 1081; *Schmidt v. Simmons,* (Ind.) 36 N. E. at 516; *State v. Summons,* 19 Ohio, at 140; *Ex parte Miller,* 41 Tex. 213.

V.   While no one of them does this, yet the cases which we have analyzed in illustrating that the rules upon which courts proceed in granting bail are inconsistent with the Pennsylvania rule, do, in their sum, indicate the true rule.

While we fully recognize that no test can be formulated which will, as a hard and fast rule, serve in all cases, we have, on great consideration, reached the conclusion that we should not weigh the evidence as a jury—should, if the testimony heard by the district court is largely oral, give that fact some

consideration—and should grant bail if, upon the evidence as a whole, weighed with judicial, dispassionate and guarded judgment, there is an abiding belief that respondent has failed to show that accused is the guilty agent in the commission of a capital offense, of which he will probably be convicted, if the law is properly administered. Putting it concretely, proof of capital guilt is evident only when the evidence, on its face and unexplained, excludes any other reasonable conclusion. The presumption of such guilt is great when the circumstances testified to are such that inference of guilt naturally to be drawn therefrom is strong, clear and convincing to the unbiased judgment and is such as to exclude all reasonable probability of any other conclusion.

We are abidingly convinced that the proof here does not meet this standard. It follows that, on appeal of plaintiff, the order below must be overruled, and plaintiff admitted to bail. On consideration of the record and of the law germane to such question, it is ordered that petitioner be admitted to bail in $10,000, with sureties to be approved either by the clerk of this court or that of the court appealed from, at the option of the petitioner.

On the appeal of plaintiff,—*Reversed.* The appeal of defendant is—*Dismissed.*

LADD, WEAVER and GAYNOR, JJ., concur. EVANS, C. J., dissents in part. DEEMER and PRESTON, JJ., dissent. All concur on dismissal of defendant's appeal.

DEEMER, J., dissenting.—I gather, from reading the opinion, that it announces the following propositions:

1. The indictment found against petitioner stands for nothing; it does not make out even a prima-facie case against the petitioner.

2. The burden is upon the defendant sheriff to show that he rightfully detains the plaintiff in his custody, and he must show not only that he holds him upon a proper warrant, but

also that it was founded upon sufficient testimony. In other words, he cannot justify by showing that he holds petitioner under a proper warrant, but must affirmatively show that petitioner was properly indicated upon sufficient testimony, and that this testimony established the crime beyond all reasonable doubt, or created a great presumption of guilt. Whether or not the sheriff could, under the majority opinion, introduce additional testimony to that found in the minutes taken of the testimony before the grand jury is not clear to me, from reading the opinion. My impression gained from it is that no other testimony may be considered save that appearing in the minutes of the testimony; for it is said it is this, and this only, upon which the indictment was found. I must respectfully dissent from these conclusions. In the first place, the overwhelming weight of authority in this country is to the effect that the indictment makes out a prima-facie case, and that the burden is upon the petitioner, in a habeas corpus case, to overcome the presumption and show that he is entitled to bail. See *Ex parte Fraley,* (Okla.) 109 Pac. 295; *In re Thomas,* (Okla.) 93 Pac. 980; *State v. Jenkins,* (La.) 50 So. 321; *Hight v. United States,* Morris (Iowa), *407; *Ex parte Alexander,* 59 Mo. 598; *In re Goans,* (Mo.) 12 S. W. 635 (17 Am. St. 571), and note to 81 Am. Dec. 87, 70 Am. St. 742, and 39 L. R. A. (N. S.) 752. But one case seems to hold to the contrary, and that is *Ex parte Newman,* (Tex.) 41 S. W. 628. This rule prevails, no matter what the view of the court as to the conclusive or inconclusive character of the indictment. The reason for the conclusion of the majority seems to be:

1. The state has the better knowledge as to what the testimony is against the petition than the petitioner; and the case is said to be like unto one where a party is charged with doing an act without a license. I cannot believe that anyone has better knowledge as to the facts of a case than the man who is charged with the offense. He is generally the only man in the world who knows all the facts and has the best knowledge as to who the witnesses are, either for or against him;

and he also absolutely knows whether their testimony is true or false. As the reason for making an exception to the rule fails, the exception must necessarily do so.

2. It is insisted that, at every stage of the proceedings, a defendant is presumed to be innocent, and in every action involving an investigation into a charge of crime, the burden is upon him who affirms, to establish the crime. It is sufficient to say that this court has held, according to the almost universal rule, that this presumption obtains only when the case is on final trial. In all other proceedings, an indictment is at least prima-facie evidence of the commission of the crime as charged. The cases, or many of them, are cited in the *Hight* case, Morris (Iowa) *407. Whatever the change in our Constitutional or statute law, there has been no change which, in my opinion, affects this rule. I affirm that, in every habeas corpus case, the burden is on the petitioner to show that he is entitled to his discharge. If this were not true a warrant would be no protection to an officer; for he would have to justify the correctness of the trial court's conclusion in the first instance that the man indicted for murder was not entitled to bail. This is not a motion by petitioner to be admitted to bail, but a habeas corpus case, where petitioner alleges and must allege that he is wrongfully restrained of his liberty by the defendant, and, under the majority opinion, if defendant does not justify by showing something aside from the indictment, order of the court, and the warrant under which he holds the prisoner, then the petitioner shall be discharged. I think that, under every known rule applicable to habeas corpus cases, the burden is upon the petitioner to show that defendant was unlawfully restraining him of his liberty, and not upon the defendant to do more than to show that he holds him on a lawful commitment issued without right to bail. Starting with the presumption that the petitioner is presumed to be innocent of the entire charge, the majority then proceed to treat the case upon testimony offered by the petitioner, which consisted of nothing more than the fragmentary min-

utes of the testimony before the grand jury, attached to the indictment. It might be observed in this connection that the petitioner believed he had the burden; for he assumed the burden and introduced whatever testimony there is in the case, save the statement or notice of the county attorney as to additional testimony he proposed to offer on the trial. It should also be observed that the petitioner did not call any witnesses; did not go on the stand himself; did not ask to cross-examine. the witnesses who were before the grand jury; and offered nothing save testimony *in support of the proposition* that he was guilty of the crime of homicide. I understand the majority to affirm that in no event can anything be considered in such a proceeding as this save the testimony upon which the grand jury acted, and as this is preserved in the minutes, this is the only testimony which may be considered. I respectfully dissent from this conclusion, because, whatever may be the other rules involved, this proposition is fraught with the very gravest danger.

I assert that all the petitioner did in this case was to introduce testimony tending to show that he was guilty of a homicide. The majority seem to think, however, that, as these minutes constituted all of the State's case before the grand jury, its weakness may be considered; and, having asserted that the indictment raises no presumption of any kind, they proceed to say that these minutes of the testimony attached to the indictment, fragmentary though they be, did not justify the trial court in denying the petitioner a right to bail. The error in this position, as I view it, is that, no matter what the presumption arising from the indictment, the minutes of the testimony taken before the grand jury should not be treated as if they were depositions and contained the whole of what each witness testified to before the grand jury. No one contends that they embody all the testimony. They are necessarily fragmentary in character, and have never been regarded in this state as anything more than memoranda signed by the witnesses. Neither the witnesses nor the State are in any

way concluded thereby, and to hold the State strictly thereto
in any proceeding is to do it a grave injustice. The matter is
one easily reached. The petitioner may call the witnesses
whose testimony is relied upon and cross-examine them on
their testimony before the grand jury and, in addition, may
introduce any testimony which he sees fit to offer. That this
is the ordinary course adopted is shown by many authorities.
See *In re Losasso,* 24 Pac. 1080 (10 L. R. A. 847); and note
to 39 L. R. A. (N. S.) 772-775.

     This rule seems to me to be the sensible and logical one,
and I dissent from the view that nothing may be considered
on such a hearing as this but the testimony attached to the
indictment; that the petitioner may rely upon the weakness
of the case as shown by these minutes as if they contained all
the testimony; and that the petitioner is not compelled to
introduce any testimony at all. I affirm that it is a wrong to
the State to treat these fragmentary minutes of the testimony
taken before the grand jury as the entire testimony in the
case, or to treat them as depositions binding upon the State,
or to treat them as all the testimony adduced before the
grand jury and to make an order admitting to bail without
any showing that there was no other material testimony than
that disclosed in the minutes. I need only cite in this con-
nection some of our cases holding that these notes are not
testimony; are not presumed to be the entire testimony; and
the inconclusive character thereof. See *State v. Ostrander,* 18
Iowa 435; *State v. Hayden,* 45 Iowa 11; *State v. Harlan,* 98
Iowa 458; *State v. Boomer,* 103 Iowa 106; *State v. Mulhern,*
130 Iowa 46; *State v. Harris,* 122 Iowa 78. It is so well set-
tled that these notes are not supposed to contain the testi-
mony in detail that no other authorities need be cited to show
that they should not be regarded as all the testimony in the
case, or as depositions. The majority view them as being all
the testimony and, in considering the effect thereof, scruti-
nize and criticize them as if they were depositions.

     As the State is not bound by these minutes, and the

indictment may rest upon testimony which was not embodied in the minutes, and as there is no showing whatever that we have all the testimony as if it were by deposition before us, I think the petitioner has failed to show that he is illegally restrained of his liberty. Upon such a hearing as this, if the indictment raises no presumption, how can it be said that there is any presumption that we have the entire testimony on which it was found? Moreover, it was entirely permissible for the State, upon this hearing, to claim that not all the testimony which the witnesses would give was set out in the minutes; and if the petitioner may rely upon the minutes, why may not the State, through its own officer, the county attorney, by a statement in his official capacity, in open court and in resistance to the petitioner's showing, show that certain witnesses already before the grand jury would testify to other facts, setting them out? This statement is the equivalent of an oath; and if petitioner may rely upon *ex parte* statements as minutes before a grand jury, why may not the State show by affidavit that other testimony is at its command which supports the indictment? Much is made in the opinion of the fact that this court, on the showing made, would not convict the petitioner and find that he should be punished by hanging. This, to my mind, misses the mark. It is for a jury to say, in such cases, what the punishment shall be, and it is not important for us to speculate as to whether it would impose the death penalty, or whether we would do so on the same showing.

In all jurisdictions save one, so far as I have been able to ascertain, no matter what the rule on the propositions of law I have been discussing, great deference is paid by appellate courts to the decision of the lower court. See *Jernagin v. State*, (Ga.) 45 S. E. 411; *Lester v. State*, 33 Ga. 192; *Ex parte Richardson*, (Ala.) 11 So. 316; *State v. Zummo*, (La.) 39 So. 442; *Ex parte McAnally*, 53 Ala. 495. The reason for this is that not only is the testimony to be considered, but also the inferences to be derived therefrom; and, where reasonable

minds differ as to the inferences, the district court, being on the ground, near the scene and in the midst of the circumstances attending the transaction, is better able than we to draw the proper inferences from the testimony adduced, particularly where that testimony is fragmentary and does not purport to be all on which the indictment was founded. *Ex parte Sloane,* (Ala.) 11 So. 14.

Another thing which merits attention in this case is the attempt to distinguish the rule announced in *Hight's* case, Morris (Iowa), *407, *supra.* As pointed out, the fundamental law at that time, being the Ordinance of 1787, provided that "all persons shall be bailable unless for capital offenses, where the proof shall be evident or the presumption great". And the statutory law at that time provided that members of the grand jury might be required by the court to testify as to the evidence given by every witness before the grand jury. See Blue Book of 1843. So that it was entirely competent for any defendant to ascertain just what the testimony was against him before the grand jury. The proceedings of the grand jury were not, therefore, secret, and it was competent for defendant to call grand jurors and have them disclose all the testimony taken. This same provision is found in substance in our present Code, and it would seem that, if one wishes to know the entire testimony on which the grand jury acted, he should call the members of that body, rather than rely upon fragmentary statements taken down by one unskilled in such matters. But however this may be, no reason appears for changing the fundamental rule announced in the *Hight* case, that, in such proceedings as this, the presumption of innocence does not come to defendant's aid. This is affirmed in many cases and, to my mind, is eminently sound. *Ex parte Jones,* 55 Ind. 176; *State v. Brewster,* 35 La. Ann. 605; *State v. Crocker,* (Wyo.) 40 Pac. 681; *Rigdon v. State,* (Fla.) 26 So. 711; *Ex parte White,* 9 Ark. 222; *Ex parte Kendall,* 100 Ind. 599; *Robinson v. Dickerson,* (Ala.) 18 So. 729; *Lynch v. People,* 38 Ill. 494; *Ex parte Smith,* (Okla.) 99 Pac. 893; *State*

*v. Herndon,* (N. C.) 12 S. E. 268; *Ex parte Vaughan,* 44 Ala. 417; *Brown v. State,* (Ind.) 46 N. E. 34; *Ex parte Fraley,* (Okla.) 109 Pac. 295; *People v. Tinder and Smith,* 19 Cal. 539.

I do not for a moment contend that the indictment is conclusive, but it does raise a presumption that the defendant therein was guilty as charged, and the burden is on him to overcome this presumption. This, petitioner in this case has not done, or attempted to do. He has not introduced one item of testimony in his own behalf. My examination of the cases confirms me in the belief that the Texas court is the only one which gives any support to the petitioner's contentions, and it has held both ways on the proposition. Finding nothing whatever introduced by petitioner which in any way overcomes the presumption arising from the indictment, I am clearly of opinion that the action of the district court should not be set aside.

All that petitioner offered was in support of the indictment; and, as the minutes of the testimony are not conclusive upon the State, mere lack of testimony as shown in the minutes should not overcome the presumption that there was sufficient testimony to justify the finding of the indictment. The petitioner should have called the grand jurors, called and cross-examined the witnesses upon whose testimony the indictment was found, introduced his own testimony or that of his witnesses, and thus overcome the presumption raised by the indictment. The proper procedure in such cases is pointed out in *Lynch v. People,* 38 Ill. 494; *Lumm v. State,* 3 Ind. 293; *Ex parte Wolff,* 57 Cal. 94; *Ex parte Hock,* 68 Ind. 206; *People v. Van Horne,* 8 Barb. 158; *People v. Shattuck,* 6 Abb. N. C. (N. Y.) 33; *Ex parte Kendall,* 100 Ind. 599.

Much more might be said against the rules announced in the opinion, but time will not permit. The real propositions involved are few, and yet so much is said in the opinion by way of argument and illustration that it has been difficult for me to really ascertain what governing principles are estab-

lished.   This is doubtless due to the writer's limitations and somewhat to lack of time to- thoroughly digest the matter.   I am firmly of opinion, however, that an application of the proper rules demands that the order of the district court should be affirmed.

I am authorized to say that Preston, J., concurs in this conclusion.

EVANS, C. J.—I think that the evidence disclosed by the minutes attached to the indictment was sufficient to justify the action of the trial. judge in refusing bail.   The majority opinion properly refrains from a discussion of the evidence because of the possible prejudice of such a discussion to the trial to be had, and I refrain from such discussion for the same reason.